**NORTHWESTERN SCHOOL DISTRICT and Willard C. Miller**

v.

**John C. PITTENGER et al.**

**Civ. A. No. 75–15 Erie.**

United States District Court, W. D. Pennsylvania.

June 16, 1975.

Donald C. Buseck, Erie, Pa., for plaintiffs.

Janet Moschetta, Pittsburgh, Pa., Robert Kane, Atty. Gen., Harrisburg, Pa., James Marnen, Erie, Pa., for defendants.

Before, WEIS, Circuit Judge, and WEBER and KNOX, District Judges.

## OPINION

KNOX, District Judge.

Plaintiffs Northwestern School District and Willard C. Miller brought this civil rights action pursuant to 42 U.S.C. § 1983 claiming that certain provisions of the Public School Code of 1949, as amended,[1] which grant sparsity payment subsidies to certain Pennsylvania school districts and not to others based on their low population densities, are in violation of the equal protection clause and due process clause of the Fourteenth Amendment. Subject matter jurisdiction is alleged under 28 U.S.C. § 1343(3) and 28 U.S.C. § 1331.

Since the plaintiffs seek to have the enforcement of a State statute declared unconstitutional, a statutory three-judge court was convened in accordance with 28 U.S.C. § 2284.[2] The defendants, certain state officials whose positions and duties are described hereafter, filed a motion to dismiss, and the court heard argument on this motion as well as on the merits of plaintiffs' claim in Erie on April 22, 1975. As discussed in this opinion, the motion to dismiss will be granted with respect to defendants' assertion that Northwestern School Dis-

---

1. 24 P.S. § 1–101 et seq. In particular the plaintiffs challenge the second paragraph of 24 P.S. § 25–2501(17) which grants "modified sparsity payments" to qualifying school districts.

2. 28 U.S.C. § 2281 provides in part:
"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute . . . shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under Section 2284 of this title."

trict lacks standing in this case, but will be denied on all other grounds. The court, however, finds in favor of the defendants on the merits.[3]

## BACKGROUND

Northwestern School District is a third-class school district of the Commonwealth of Pennsylvania, located in Erie County. Northwestern was formed by a jointure on July 1, 1956, of the Albion Area School District, which originally was comprised of five school districts, and Springfield Township School District, which originally was comprised of two school districts. While this reorganized school district initially was known as Albion Area—Springfield Township School District, on July 1, 1959, the district became Northwestern Union School District. Northwestern School District encompasses an estimated area of 119.9 square miles and contains an estimated population of 9,087 persons according to the 1970 United States Census. These figures yield an estimated population of 76 persons per square mile.

Plaintiff Willard C. Miller resides at R.D. #2, Albion, Pennsylvania and is a taxpayer in Northwestern School District. He presently has two children attending schools in Northwestern School District: Jody Miller, age 17, who is a senior at Northwestern High School and Rebecka Miller, age 13, who is in the seventh grade at Northwestern Junior High School.

The individual defendants hold the following positions: John C. Pittenger is the Pennsylvania Secretary of Education; John Kosoloski is the Director of the Pennsylvania Bureau of Educational Administration; and Grace Sloan is the State Treasurer. Pittinger and Kosoloski are responsible for enforcing the provisions of the statute in question, and Sloan is responsible for disbursing funds authorized by the statute.

The legislation challenged by the plaintiffs is 24 P.S. § 25–2501(17).[4] The first paragraph of Sec. 25–2501(17) establishes a system of "sparsity payments" to school districts with populations of less than 50 persons per square mile. If a school district qualifies for these payments as a result of its low population density, the district will receive a subsidy from the Commonwealth which is determined in accordance with a formula contained in the statute.

While the plaintiffs do not challenge this provision by which the State grants "sparsity payments" to certain sparsely populated school districts, they do argue that the second paragraph of section 25–2501(17), which establishes "modified sparsity payments", is in violation of the equal protection clause. In order to qualify for a "modified sparsity payment" from the State, a school district must have a population of between 50

---

3. In order to give the plaintiff school district sufficient time to prepare its budget for the next fiscal year, the court entered an Order on May 6, 1975, granting judgment for the defendants in this case. This opinion now states the reasons for the court's decision.

4. 24 P.S. § 25–2501(17) provides:
" 'Sparsity factor' shall be assigned for those districts whose population is less than fifty (50) per square mile as determined by the Secretary of Education from the most recent records of the United States Census Bureau. A school district qualifying under the sparsity factor shall be paid by the Commonwealth . . . [a subsidy computed in accordance with the formula stated in this subsection].
"Any school district assigned sparsity factor for any school year prior to 1969–70 or

for any subsequent school year and any reorganized or merged school district comprised of one or more component school districts any of which had been assigned sparsity factor for any school year prior to 1969–70 or any subsequent school year which for any school year thereafter is determined by the Secretary of Education to have a population of fifty (50) per square mile or more, shall for the school year 1970–71 and each school year thereafter, qualify for a modified sparsity payment which shall be the ratio of its population per square mile to fifty (50) subtracted from 2.-00 and multiplied by the amount to which it would have been entitled had its population per square mile been less than fifty (50)."

and 100 persons per square mile, and either the school district itself or, if it is a reorganized or merged school district, one or more of its component school districts must have been assigned eligibility for "sparsity payments" under the first paragraph of Section 25–2501(17) at some time. School districts which never have been entitled to "sparsity payments" are not eligible for "modified sparsity payments" even though they may have population densities of between 50 and 100 persons per square mile. In effect, a school district entitled to a "modified sparsity payment" receives a subsidy from the State equal to a percentage of what it would have received if it had less than 50 persons per square mile, which percentage decreases to zero as its population increases to 100 persons per square mile. Northwestern School District was formed as stated on July 1, 1956, and hence contained no component district eligible for sparsity subsidies when the legislation was first enacted. Act of Feb. 1, 1966, P.L. (1965) 1642.

## MOTION TO DISMISS

The defendants filed a motion to dismiss presenting several claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. While the motion will be denied on all grounds except with respect to the claim that Northwestern School District lacks standing in this case, the court will address only the defendants' three most substantial arguments in this opinion.

■ The defendants assert that both Northwestern School District and Willard C. Miller lack standing to bring the present action. We agree that the school district lacks standing, but find that the individual plaintiff has standing as a municipal taxpayer and as a parent. Pennsylvania case law is clear that a school district is an agency of the State, created by law for the purpose of promoting education, and has only those powers that are granted by statute. See *Chartiers Valley Joint Schools v. County Board of School Directors of Allegheny County*, 418 Pa. 520, 211 A.2d 487 (1965); *Slippery Rock Area Joint School System v. Franklin Township School District*, 389 Pa. 435, 133 A.2d 848 (1957). The Supreme Court has held on several occasions that a municipal corporation created by a State for the better ordering of government has no rights under the United States Constitution which it may invoke in opposition to the will of its creator. *Williams v. Mayor & City Council of Baltimore*, 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015 (1933); *City of Trenton v. New Jersey*, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923); *City of Newark v. New Jersey*, 262 U.S. 192, 43 S.Ct. 539, 67 L.Ed. 943 (1923). See also *Chester County Institution District v. Comm.*, 341 Pa. 49, 17 A.2d 212 (1941).

This rule applying to municipal corporations would appear to apply equally to school districts which in Pennsylvania are in the highest sense creatures of the State. When faced with a similar action by a Nebraska school district to have legislation dealing with state appropriations to school districts declared unconstitutional, a statutory three-judge court held that the Fourteenth Amendment, equal protection clause, has no application to the acts of a State against its own political subdivisions. *Triplett v. Tiemann*, 302 F.Supp. 1239, 1242 (D. Neb.1969) (per curiam).

■ Willard C. Miller does have standing as a municipal taxpayer to raise the equal protection claim. The defendants base their argument that Miller lacks standing as a taxpayer on *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Flast, however, is not controlling because in that case the Supreme Court dealt only with the issue of standing of a federal taxpayer to challenge the constitutionality of a federal spending program. In the present case, we are dealing with standing of a municipal taxpayer to challenge a state spending program. The Supreme Court has distinguished

cases of federal taxpayer standing from those of municipal taxpayer standing. While the interest of a federal taxpayer may be too remote, uncertain, and indirect to justify relief and, therefore, must be measured by the Flast test, a municipal taxpayer is more likely to show a sufficient direct monetary injury to provide a basis for standing. See *Doremus v. Board of Education*, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952); *Massachusetts v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923); *Crampton v. Zabriskie*, 101 U.S. 601, 25 L.Ed. 1070 (1879). Since the statute in question denies a substantial amount of state aid to the school district within which Miller resides and pays taxes, we find that he has a sufficient personal stake in the outcome of the controversy to grant him standing in this case.

Miller also has standing as a parent to bring this action. He presently has two children who attend public schools in Northwestern School District. Rule 17(a) of the Federal Rules of Civil Procedure permits an infant to sue by his next friend, and, if necessary, the caption of the case could be amended to clarify Miller's capacity. In several cases involving challenges to various state laws under the establishment clause of the First Amendment, the Supreme Court has held that parents of children presently attending schools affected by the laws in question had standing to raise the constitutional claim. See, *e.g.*, *Abington School District v. Schempp*, 374 U.S. 203, 224 n.9, 83 S.Ct. 1560, 1572 n.9, 10 L.Ed.2d 844, 859 n.9 (1963); *Engel v. Vitale*, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962); *Zorach v. Clauson*, 343 U.S. 306, 309 n.4, 72 S.Ct. 679, 681 n.4, 96 L.Ed. 954, 959–60 n.4 (1952). Moreover, in *San Antonio School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), the Supreme Court reached the merits of a class action attacking the Texas system of financing public education which was brought by Mexican-American parents whose children were attending schools in the least affluent school district in the San Antonio area.

■ The defendants also argue that the court lacks jurisdiction over the subject matter of this lawsuit. We already have held that Willard C. Miller has standing to bring this action for relief under 42 U.S.C. § 1983.[5] Subject matter jurisdiction, therefore, exists under 28 U.S.C. § 1343(3)[6] which is the jurisdictional counterpart of Section 1983. Since we find that jurisdiction exists under Section 1343(3), we need not reach the question of whether Miller has satisfied the $10,000 jurisdictional amount required for federal question jurisdiction under 28 U.S.C. § 1331.

■ Finally in their motion to dismiss, the defendants argue that the court should abstain from exercising jurisdiction over the present case because it involves a challenge to the constitutionality of a recently enacted and unclear state statute which has not yet been ruled on by the state courts. If the plaintiffs had challenged the "modified sparsity payments" legislation as being violative of the Constitution and laws of Pennsylvania as well as of the Four-

---

5. 42 U.S.C. § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

6. 28 U.S.C. § 1343 provides in part:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

&ast; &ast; &ast; &ast; &ast;

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;"

teenth Amendment equal protection clause, abstention would have been proper in this case. See *Reetz v. Bozanich*, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Likewise, if a separate action attacking 24 P.S. § 25-2501(17) primarily on state grounds were proceeding in state court at the same time that we were considering this civil rights action, abstention would have been the appropriate course. See *Askew v. Hargrave*, 401 U.S. 476, 91 S. Ct. 856, 28 L.Ed.2d 196 (1971) (per curiam).

The language of the statute in question clearly states the requirements which a school district must meet in order to qualify for "modified sparsity payments". As stated by the Supreme Court in *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), where there is no ambiguity in the state statute, the federal court should not abstain merely to await an attempt to vindicate the claim in a state court. This consideration is particularly relevant in this case where, because of the duplication of effort and inherent delay caused by abstention, school districts which presently receive "modified sparsity payments" would face further uncertainty in planning their budgets as they awaited a ruling on whether the state subsidies could be continued. For these reasons, we have decided to reach the merits of plaintiffs' claims.[7]

## EQUAL PROTECTION CLAIM

The plaintiffs argue that the second paragraph of 24 P.S. § 25-2501(17), dealing with "modified sparsity payments", is in violation of the equal protection clause of the Fourteenth Amendment because the statute divides school districts with similar characteristics into those which are eligible for state subsidies and those which are not on the basis of arbitrary criteria. They claim that under the statute in question, two school districts could have identical populations of between 50 and 100 persons per square mile and identical financial need, but only a school district which had qualified for "sparsity payments" in the past or which contains a component school district which had qualified for such aid is entitled to "modified sparsity payments." Others with the same number of persons get nothing.

To illustrate this point, the plaintiffs have compared certain school districts which receive "modified sparsity payments" with Northwestern School District.[8] In particular the plaintiffs point to Corry School District which also is located in Western Pennsylvania and contains a third-class city, but which is entitled to "modified sparsity payments" because one of its component school districts, Sparta School District, received "sparsity payments" prior to its merger with Corry. According to Exhibit 5 of the stipulation of the parties, Northwestern has a population per square mile of 74 and is not entitled to "modified sparsity payments" while Corry has a population per square mile of 66.71 and received $429,063.83 in "modified sparsity payments" for the 1974–75 fiscal year. If Northwestern School District had qualified for "modified sparsity payments", it would have received $288,559.40 for the 1974–75 fiscal year under the formula contained in 24 P.S. § 25-2501(17).

7. Although the parties did not plead or brief the question of whether 24 P.S. § 25-2501(17) is in violation of the Pennsylvania Constitution, the court notes that Art. 3, Sec. 31 of the state Constitution, P.S., which prohibits the General Assembly from passing local or special legislation, may apply to the statute involved in this case. If such a claim were to be presented by the plaintiffs, the appropriate forum would be the Pennsylvania state courts.

8. According to the stipulation of the parties, 71 Pennsylvania school districts receive "sparsity payments", and 13 school districts receive "modified sparsity payments" under 24 P.S. § 25-2501(17).

■ The burden of establishing the unconstitutionality of a statute rests on the party who assails it. *Metropolitan Casualty Insurance Co. v. Brownell*, 294 U.S. 580, 55 S.Ct. 538, 79 L.Ed. 1070 (1935). In *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), the Supreme Court described the scope of the equal protection clause as follows:

> ". . . the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." 366 U.S. at 425, 81 S. Ct. at 1105, 6 L.Ed.2d at 399.

See also *Salyer Land Co. v. Tulare Lake Basin Water Storage District*, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973); *McDonald v. Board of Election Commissioners of Chicago*, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); *Metropolitan Casualty Ins. Co. v. Brownell, supra*, 294 U.S. at 584, 55 S.Ct. 538.

■■ Since education is not a fundamental constitutional right and the statute in question does not create a suspect classification, the court need not apply the strict judicial scrutiny test in the present case. *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 40, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Rather, the rational basis test, by which a statute is upheld if it bears some rational relationship to a legitimate state purpose, applies in considering the constitutionality of 24 P.S. § 25–2501(17). This is especially true since the plaintiffs ask us to interfere with the State's fiscal policies—an area in which the courts have traditionally deferred to the broad discretion of state legislatures. See *San Antonio Independent School District v. Rodriguez, supra*, at 40–41, 93 S.Ct. 1278.

We find that the second paragraph of Section 25–2501(17) granting "modified sparsity payments" to certain school districts does not violate the equal protection clause because there appear to be reasonable grounds for the legislation. As originally enacted in 1966, Section 25–2501(17) provided only for "sparsity payments" to school districts with populations of less than 50 persons per square mile. P.L. (1965) 1642, No. 580, Sec. 5 (Feb. 1, 1966). The plaintiffs do not allege that these "sparsity payments" are unconstitutional. In 1971 the statute was amended to create "modified sparsity payments" for school districts which had a population of between 50 and 100 persons per square mile and which had qualified for "sparsity payments" in past years. P.L. 339, No. 88, Sec. 3 (Aug. 18, 1971).

Given the fact that the 1970 United States Census produced new figures from which the Secretary of Education would re-evaluate whether a school district was eligible for "sparsity payments", the state legislature reasonably could have concluded that it was necessary to provide transitional relief in the form of "modified sparsity payments" for school districts which previously had been receiving "sparsity payments" but which suddenly found themselves with sufficient population growth to lift them above the 50 persons per square mile limit. Viewed in this light the "modified sparsity payments", which decrease in amount as a school district's population per square mile approaches 100, appear to be a reasonable effort to provide relief to school districts which in effect had become dependent upon "sparsity payments" in planning their budgets.[9]

---

9. We note, however, that there may be a point at which "modified sparsity payments" are continued to a school district for such a long period of time that this implied justifi-

Section 25–2501(17) was further amended in 1972 to provide that any reorganized or merged school district would be eligible for "modified sparsity payments" if one or more of its component school districts had been eligible for "sparsity payments". P.L. 1231, No. 273, Sec. 2 (Nov. 15, 1972). This provision reasonably appears to be based on an effort to encourage mergers with small, sparsely-populated school districts in order to develop a more efficient system of school administration. By providing "modified sparsity payments" to a reorganized school district comprised of one or more school districts which had been eligible for "sparsity payments", the statute in effect offers a dowry to larger school districts which otherwise may not be willing to merge with smaller, less affluent districts.

■■■ In conclusion, the two requirements for eligibility to receive "modified sparsity payments" that are challenged by the plaintiffs—that a school district must have qualified for "sparsity payments" in past years or must be comprised of one or more component school districts which had been eligible for such payments—bear a rational relationship to legitimate state interests. Since we find that Sec. 25–2501(17) does not violate the equal protection clause, we need not consider plaintiffs' contention that the court should sever out these requirements, thereby making Northwestern and some 60 other school districts eligible for "modified sparsity payments".[10]

In view of our holding, we do not reach the question of whether a decree for plaintiff would require payment of money from the state Treasury in violation of the Eleventh Amendment and the principles expounded in *Employees v.*

*Dept. of Public Health & Welfare*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) and *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

The foregoing contains the findings of fact and conclusions of law in conformity with Rule 52(a).

The within opinion sets forth the reasons for the order of May 6, 1975, entering judgment for the defendants in this case.

cation based on transitional relief would no longer be applicable.,

10. While the plaintiffs focused most of their time and effort on the equal protection argument, they also claim that the statute in question violates the Fourteenth Amendment

due process clause. The cases they cite, however, deal with procedural due process and are not applicable to the facts of this case. For the reasons stated above with respect to the equal protection claim, we find that 24 P.S. § 25–2501(17) does not violate substantive due process.