The **RIDGEFIELD WOMEN'S POLITICAL CAUCUS, INC., et al.**

v.

**Louis J. FOSSI, Individually and as First Selectman of the Town of Ridgefield, et al.**

**Civ. No. B–74–425.**

United States District Court,
D. Connecticut.

Oct. 2, 1978.

Beverly J. Hodgson, Koskoff, Koskoff, Rutkin & Bieder, Bridgeport, Conn., for plaintiffs.

Richard J. Fricke, Ridgefield, Conn., for defendants.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

This suit raises the question of whether, under the circumstances of this case, a town may constitutionally convey property for a nominal consideration to a private organization that discriminates on the basis of sex. Plaintiffs Carol Octeau, Barbara Wardenburg, and Allison McLean are residents and taxpayers of the Town of Ridgefield, Connecticut, and plaintiffs Nan Octeau and Elizabeth Parkhurst are minor residents of Ridgefield; plaintiff Ridgefield Women's Political Caucus, Inc. is an organization of women, a purpose of which is to abolish discrimination based on sex in Ridgefield. Defendants are the Selectmen of the Town. Plaintiffs seek to enjoin defendants from "conveying, granting or otherwise transferring any interest in real property owned by the Town of Ridgefield to the Ridgefield Boy's Club, Inc.," an organization alleged to restrict membership to males. This action is brought under 42 U.S.C. § 1983, with jurisdiction based on 28 U.S.C. § 1343(3), and is now before the Court on cross motions for summary judgment.

The parties have entered into a stipulation of facts for the purpose of the summary judgment motions. The Town of Ridgefield owns approximately 5.8 acres of land on Governor Street in Ridgefield, valued in excess of fifty thousand dollars. On December 1, 1957, the Town leased a portion of that property to the Ridgefield Boy's Club for a term of twenty-five years at an annual rental of one dollar, and in December, 1967, the Town increased the area of land included in the lease to 4.9 acres. The original lease provided that the lessee could, at its option, renew the lease on the same terms for an additional term of twenty-five years, and that the lessee could construct "a suitable building on the premises to provide adequate facilities incidental to the operation of the Boy's Club." Subsequently the Boy's Club constructed a building that contains recreational and other facilities.

On November 20, 1974, the Town held a town meeting for the purpose of deciding whether the Town should authorize the Board of Selectmen to convey to the Boy's Club the 5.8 acres of land on Governor Street for the price of one dollar. This conveyance was approved at the meeting. However, in March, 1974, the plaintiffs brought suit to enjoin the conveyance of the property to the Boy's Club, and this Court deferred decision on the plaintiffs' application in order to determine whether the Ridgefield Boy's Club would admit females to membership in the Club. On or about December 30, 1974, plaintiffs Elizabeth Parkhurst and Nan Octeau applied for membership, and on January 8, 1975, the Board of Directors of the Boy's Club rejected the two applications, stating that

> [w]hereas the Ridgefield Boy's Club does not have the physical capabilities nor financial resources nor an adequate staff to provide a duplicate program, the board of directors of the Ridgefield Boy's Club is unable to accept application for common membership from other than boys at this time.[1]

Ten other girls who subsequently applied for membership in the Boy's Club were also denied admission. Thus, as of September 12, 1977, the date of the stipulation, the Ridgefield Boy's Club had accepted no girls as regular members. However, at a point in time not specified in the stipulation, the Boy's Club admitted at least some girls as associate members. Girls admitted as associate members were permitted to use the Boy's Club's facilities on Mondays and for occasional special events; the boys admitted as regular members were permitted to use the Club's facilities on Tuesdays through Sundays and for occasional special events. However, at oral argument on the cross motions for summary judgment, the Court was informed that the Club's program for girls had been discontinued due to lack of participation.

▇▇ Plaintiffs claim that the conveyance of the Town's property by the defend-

---

1. While not mentioned specifically in the stipulation as a stated reason for the Ridgefield Boy's Club rejection of applicants Parkhurst and Octeau, the stipulation does note that the

National Boy's Club, Inc., of which the Ridgefield Boy's Club is a member, provides in its constitution and bylaws that membership in Boy's Clubs shall be limited to males.

ant selectmen[2] to the Boy's Club constitutes governmental support of sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.[3]

Several distinctions must be drawn between the issues in this case and in similar cases in order to bring the dispute into sharp focus. This is not an attack on the discriminatory practices of a private organization on the ground that the private organization has received so much governmental support that the private organiza-

2. The defendants are sued in their official capacities, and they assert that since they are attempting to perform only ministerial duties to carry out the policy decision approved by the Town, the suit is in reality against the Town. Even if the conveyance can be considered the performance of ministerial duties, suit against the Town to challenge official policy of the Town is now authorized by 42 U.S.C. § 1983. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

3. The parties have not explicitly considered whether the plaintiffs have standing to assert their claims, but the Court must be satisfied that at least the constitutional requirement of Article III standing has been met. The claim of the girls denied admission to the Boy's Club alleges an injury in fact (denial of such admission) and an interest (freedom from discrimination based on gender) that is "arguably within the zone of interest to be protected . . . by the . . . constitutional guarantee in question." *Data Processing Service Organization v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). Thus their standing to challenge the denial of their admission in a suit against the Boy's Club would be clear. But equivalent standing to challenge the Town's right to confer a public benefit upon the Boy's Club may not be assumed.

As developed, *infra,* the claim by the girls can be viewed as a challenge to a public benefit conferred upon a private organization that discriminates, and also as a challenge to a public benefit because the benefit itself is extended in a way that discriminates. Challenges to benefits that aid private organizations allegedly denying protected rights have produced mixed results. *Compare Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), and *Melanson v. Rantoul,* 421 F.Supp. 492 (D.R.I.1976), with *Gilmore v. Montgomery,* 417 U.S. 556, 94 S.Ct. 2416, 41 L.Ed.2d 304 (1974), and *Norwood v. Harrison,* 413 U.S. 455, 93 S.Ct. 2804, 37 L.Ed.2d 723 (1973). *EKWRO* rejected standing in the absence of any indication that withdrawal of the challenged benefit (favorable tax treatment) would result in the plaintiffs' securing the services they were denied. 426 U.S. at 42, 96 S.Ct. 1917. However, *Norwood* tacitly assumed the existence of standing, accepting the assertion that withdrawal of the challenged benefit (loan of textbooks) had not been shown to cause any reduction in enrollment in the all-White private school. 413 U.S. at 465, 93 S.Ct. 2804. The standing of the girls in this case is in one respect clearer than the plaintiffs in *Norwood*: to the extent that these girls are challenging the benefit because it aids an entity that discriminates, they were injured by denial of access to that entity, whereas the *Norwood* plaintiffs were not complaining about denial of access to the all-White school.

In any event, to the extent that the girls are challenging the public benefit because the benefit itself is extended in a way that discriminates, their standing is as valid as if they were complaining that the Town runs a facility for boys and has no comparable facility for girls. They claim injury from lack of a public benefit comparable to what is available for boys, and their interest to be free from such discrimination is at least arguably within the protection of the Equal Protection Clause.

The standing of the taxpayer-parents is also valid. Taxpayer standing to challenge municipal spending has long been recognized by the Supreme Court. *Crampton v. Zabriskie,* 101 U.S. 601, 609, 25 L.Ed. 1070 (1879). The distinction between taxpayer standing to challenge municipal but not federal spending was explicitly made in *Frothingham v. Mellon,* 262 U.S. 447, 486–87, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), and the extension of taxpayer standing to challenge federal expenditures alleged to violate the Establishment of Religion Clause, *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), should not be considered a retrenchment of taxpayer standing to challenge municipal expenditures. *See Northwestern School District v. Pittenger,* 397 F.Supp. 975, 979–80 (W.D.Pa.1975); *see also Levy v. Parker,* 346 F.Supp. 897, 904 (E.D.La.1972), *aff'd,* 411 U.S. 978, 93 S.Ct. 2266, 36 L.Ed.2d 955 (1973). It is not necessary to determine whether a challenge to public expenditures under the Equal Protection Clause satisfies the requirements *Flast* established for federal expenditures and found met as to challenges under the Establishment of Religion Clause. It is sufficient to note that this challenge to a municipality's proposal to donate valuable town assets is a "good-faith pocketbook action." *Doremus v. Board of Education,* 342 U.S. 429, 434, 72 S.Ct. 394, 96 L.Ed. 475 (1952). Sale of the land at fair market value would inure to the benefit of the local taxpayers.

tion is subject to Fourteenth Amendment limitations. See *Wahba v. New York University*, 492 F.2d 96 (2d Cir. 1974); *Grafton v. Brooklyn Law School*, 478 F.2d 1137 (2d Cir. 1973). The plaintiffs are not suing the Boy's Club in an effort to strike down its discriminatory admissions policy. That type of attack would raise the issue of whether the Boy's Club is subject to the Fourteenth Amendment. This attack is upon the financial benefit that the Town seeks to confer upon the Boy's Club. Unquestionably the Fourteenth Amendment applies to official action of the Town, and the issue is whether, in the circumstances of this case, significant financial support by a town to a private organization that limits membership to boys violates the Fourteenth Amendment. The distinction between suits against the discriminating private organization and suits against the public body offering public assistance to such organizations has been pointedly recognized in this Circuit. See *Jackson v. Statler Foundation*, 496 F.2d 623, 637 (2d Cir. 1974) (Friendly, J., dissenting from denial of reconsideration *en banc*).

Within the broad area of challenges to governmental aid to private organizations that discriminate, several distinctions must be made. This case does not involve an attack on governmental services provided generally to all private organizations, such as police and fire protection. See *Norwood v. Harrison*, 413 U.S. 455, 465, 93 S.Ct. 2804, 37 L.Ed.2d 723 (1973). A virtual gift of valuable land is an even greater departure from "generalized services" than the loan of textbooks in *Norwood, ibid.* Nor does this case involve a public benefit funneled through a discriminating private organization to discrete projects whose benefits are available to all. See *New York City Jaycees, Inc. v. United States Jaycees, Inc.*, 512 F.2d 856, 859 (2d Cir. 1975).

■ At one level of analysis, this case is an attack on a public financial benefit alleged to support private discrimination. As such, a substantial challenge is presented. Inquiry would focus on whether the private entity is receiving significant support and whether the entity is discriminating. See *Gilmore v. Montgomery*, 417 U.S. 556, 94 S.Ct. 2416, 41 L.Ed.2d 304 (1974); *Norwood v. Harrison, supra.* While the stipulated facts do not disclose the relative significance of the proposed donation to the total assets or operating budget of the Boy's Club, there can be little doubt that the significance of the proposed assistance exceeds that of the textbook loans in *Norwood.* Here, as in *Norwood,* there is no evidence that lack of the public benefit would cause abandonment of the discrimination, but the Constitution does not permit public funds "to aid discrimination even when there is no precise causal relationship between state financial aid to a private school and the continued well-being of that school. A State may not grant the type of tangible financial aid here involved if that aid has a significant tendency to facilitate, reinforce, and support private discrimination." 413 U.S. at 466, 93 S.Ct. at 2811. Of course, that observation was made in the context of racial separation in education, a context where separation is inherently unequal. *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). No comparable ruling has been made as to whether separation of the sexes in undergraduate education is an unlawful discrimination.[4] See *Vorchheimer v. School District of Philadelphia*, 532 F.2d 880 (3d Cir. 1976),

4. It remains to be determined in an appropriate case whether support necessary to condemn public assistance to a private organization that discriminates on the basis of gender needs to be more substantial or more causally related to the discrimination than the support of private discrimination on the basis of race. With respect to the somewhat similar issue of state action, this Circuit has "recognized the existence of a 'double standard' in state action— 'one, a less onerous test for cases involving racial discrimination, and a more rigorous standard for other claims,' *Jackson v. Statler Foundation*, 496 F.2d 623, 629 (2d Cir. 1974)." *Weise v. Syracuse University*, 522 F.2d 397 (2d Cir. 1975). *Weise* specifically left open the question of whether a claim of gender discrimination would always activate the less onerous test for state action, preferring to apply the formulation from the racial cases only because of the nature of the particular gender-based claim alleged. 522 F.2d at 406.

*aff'd by an equally divided court,* 430 U.S. 703, 97 S.Ct. 1671, 51 L.Ed.2d 750 (1977) (upholding separate but substantially equal high school educational opportunities for boys and girls).

But at a more basic level of analysis, this case is an attack on a public financial benefit that is alleged not only to support private discrimination, but also to discriminate of its own force because it benefits boys without any comparable benefit for girls. There is no serious dispute that the public benefit the Town proposes to provide for boys has no equivalent counterpart for girls.[5] While it may be assumed that the public educational system of Ridgefield is not devoid of all recreational opportunities for girls, there is no claim that Ridgefield provides for girls anything like a clubhouse with an organized program of varied after-school activities such as are available to boys through the Boy's Club. Nor can there be any serious claim that the one-day-a-week access for girls formerly available at the Boy's Club on Mondays provided opportunity of substantial equality to that available to boys. Whatever the rough contours of "separate but equal," they are not met by a policy of "never on Sunday or Tuesday through Saturday."

■ Governmental action that benefits members of only one sex is scrutinized for constitutional validity under a test that requires the discrimination to bear a fair and substantial relationship to a legitimate governmental objective. *Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975); *Kahn v. Shevin,* 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974). Ridgefield contends that a substantial public purpose is being served by the proposed grant of land, a purpose endorsed by the citizens of the Town. However, the issue is not whether the grant of land serves a public purpose; the issue is whether the discrimination arising from public assistance to boys without comparable assistance to girls serves a public purpose. Plainly it does not. And the discriminatory effect of the challenged assistance is not excused by the good intentions of the citizens of Ridgefield to aid a worthwhile organization like the Boy's Club. "The existence of a permissible purpose cannot sustain an action that has an impermissible effect." *Wright v. Council of City of Emporia,* 407 U.S. 451, 462, 92 S.Ct. 2196, 2203, 33 L.Ed.2d 51 (1972).

■ Equally unavailing is defendants' reliance on 20 U.S.C. § 1681, which exempts youth service organizations from the ban on sex discrimination in connection with federal funds for education. Congressional authorization of federal funding to private organizations that restrict membership on the basis of gender cannot validate governmental action that violates the Fourteenth Amendment. If standing were available,[6] a substantial constitutional question would arise if federal funds were offered to the Boy Scouts with no comparable benefits to the Girl Scouts.

■ The plaintiffs are entitled to a judgment permanently enjoining the defendants from conveying land to the Ridgefield Boy's Club for less than fair value as long as the Boy's Club limits membership to boys and as long as the Town of Ridgefield fails to afford girls recreational opportunities substantially equivalent to those provided by the Boy's Club to boys.[7]

---

5. This case does not require decision as to whether the doctrine of "separate but equal" is valid in the context of recreational opportunities for boys and girls because even if applicable, the doctrine has not been satisfied. Nor is it necessary to decide at this point the extent of recreational opportunities for girls that must be provided by Ridgefield before a donation of land to the Boy's Club would be permissible.

6. *Compare Frothingham v. Mellon,* 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), *with*

*Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

7. The plaintiffs' prayer for relief seeks to enjoin the proposed conveyance, and makes no precise claim for relief with respect to the current lease. An injunction is sought to prevent the conveyance of "any interest" in Town-owned property (Complaint, ¶ VII 3). The leasehold interest has already been conveyed, and only the fee interest is proposed to be conveyed. A declaratory judgment is sought to declare that "any transfer" of property is unconstitutional

(Complaint, ¶ VII 3). However, in the absence of any claim for equitable relief to alter the present lease, it would be inappropriate to enter a declaratory judgment that only determines the validity of actions that have been taken. *Cf. Ashcroft v. Mattis,* 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977). There is thus no occasion to consider the equitable issues that might arise if an injunction were sought to require a cancellation of the leasehold interest in the absence of fair value rental. These issues would concern the fact that the 25-year lease has only four more years to run, and the Boy's Club has built a substantial structure on the premises. Nor need there be present consideration of the issues that may arise if the Boy's Club seeks to exercise its option to renew the lease when the initial 25-year term expires. With the conveyance of the land enjoined, there is an opportunity for all concerned to develop equality of recreational opportunities for the girls and boys of Ridgefield.