877 F.Supp. 245 (1995)
SCHOOL DISTRICT OF PHILADELPHIA, Hubert Chester, Holliday Hammond and Cumberland Farms, Inc. (intervenor),
v.
PENNSYLVANIA MILK MARKETING BOARD, Leon H. Wilkinson, J. Robert Derry, Donald E. Lanius and O. Frank Degarcia.
Civ. A. No. 94-5656.
United States District Court, E.D. Pennsylvania.
February 14, 1995.
*246 *247 *248 Sheldon A. Weiss, Millburn, NJ, Jackie B. Sparkman, Office of Gen. Counsel, Philadelphia, PA, for plaintiffs.
Ernest D. Preate, Jr., Atty. Gen., Gwendolyn T. Mosley, Sr. Deputy Atty. Gen., John G. Knorr, III, Chf. Deputy Atty. Gen., Chief, Litigation Section, Harrisburg, PA, for defendants.

MEMORANDUM
JOYNER, District Judge.
Defendants have moved this Court to dismiss the instant action for a number of reasons that include improper venue, lack of standing, Eleventh Amendment immunity, and failure to state a claim upon which relief can be granted. This case arises out of the Pennsylvania Milk Marketing Board (PMMB) Order A-863, which establishes minimum milk prices in PMMB Area # 1. Area # 1 consists of Southeastern Pennsylvania, including Philadelphia, and falls entirely within the Eastern District. 31 Pa.Stat.Ann. § 700j-201 (1958 & Supp.1994).
The School District of Philadelphia and two taxpayers and parents of children attending schools in the School District have sued the PMMB and its three Members and Chief Executive Officer for alleged Constitutional violations based on the minimum milk prices the PMMB has set. Plaintiffs seek declaratory and injunctive relief to remedy violations of the Commerce Clause, 42 U.S.C. § 1983 (1994), and substantive and procedural due process and equal protection under the Fourteenth Amendment. Cumberland Farms, Inc. is a New Jersey milk supplier that has intervened as a Plaintiff to assert rights under the Commerce Clause to free access to the School District's milk market.
Federal law regulates the prices that processors must pay to dairy farmers for their raw milk. 7 U.S.C. §§ 601-24 (1980 & 1994). It does not set any minimum price for the re-sale of finished milk to consumers or wholesalers by processors. Pennsylvania's Milk Control Law, 31 Pa.Stat.Ann. §§ 700j-101  700j-1302 (1958 & Supp.1994) (the Milk Law) does set such minimum prices, which in Area # 1 are allegedly about 5 cents more per half pint than the price for half pints of milk in neighboring states.
Pursuant to its creating statute, the PMMB's purpose is to:
ascertain and maintain such prices paid to producers, to dealers and to stores for milk ... as will be most beneficial to the public interest, best protect the milk industry of the Commonwealth and insure a sufficient quantity of pure and wholesome milk to inhabitants of the Commonwealth, having special regard to the health and welfare of children residing therein.
31 Pa.Stat.Ann. § 700j-801. Plaintiffs contend that this law, enacted during the Depression to preserve the milk economy, exists now only to protect the fortunes of milk processors and dealers. In addition, Plaintiffs assert that because the PMMB sets minimum prices based on each milk marketing area's dealers' costs, it is specifically designed to protect inefficient in-state dealers from competition from more efficient out-of-state dealers.

VENUE
Defendants argue that venue is improper in this district and the case should be dismissed entirely or transferred to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1406(a) (1993). According to 28 U.S.C.A. § 1391(b) (1993):
A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in:
(1) a judicial district where any defendant resides, if all defendants reside in the same State,
(2) a judicial district in which a substantial part of the events or omissions giving rise to the subject of the action is situated, or
(3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.
Defendants use (b)(1) to argue that venue is improper in the Eastern District because all defendants, being a state agency and officers of that agency, are residents of the *249 Middle District for venue purposes. Plaintiffs, however, use (b)(2) to argue that venue is proper in the Eastern District because a substantial part of the events giving rise to their claims occurred here.
Although the issue is not framed as such, the parties' dispute seems to be whether we should read § 1391(b) conjunctively or disjunctively, i.e., whether either (b)(1) or (b)(2) can be used to establish venue, or whether (b)(2) can only be used if (b)(1) cannot. The question is affected by the fact that the venue statute was substantively amended in 1990. Pub.L. 101-650, Title III, § 311, 104 Stat. at 5114.
Neither party cites any authority that focusses on this particular issue. In fact, we have found very little case-law on the issue at all, and even less addressing the 1990 Amendments to § 1391. Before the 1990 Amendments, the Eastern District held that (b)(1) and (b)(2) were to be read conjunctively. Our Court held that "[t]he view that [Leroy v. Great Western United Corp., 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979) an earlier case interpreting § 1391] permits suit to be brought in the district where the claim arise only if all defendants do not reside in the same district has some support. We do not, however, subscribe to that view." Reitnour v. Cochran, No. 86-4869, 1987 WL 9774, 1987 U.S.Dist. Lexis 3098 (E.D.Pa. Apr. 22, 1987). Likewise, our Court held that (b)(2) gives a plaintiff an "alternative forum for his or her lawsuit in addition to the defendants' home district." Catrambone v. Bloom, 540 F.Supp. 74, 76 (E.D.Pa.1982).
Since the 1990 Amendments, neither the Third Circuit nor the Eastern District has ruled on this issue. In Merchants National Bank v. SafraBank, 776 F.Supp. 538, 541 (D.Kan.1991), however, the Kansas District Court held that the 1990 Amendments lent even more support to the conjunctive theory it had adopted earlier.[1] Accordingly, we find that even though venue would be appropriate in the Middle District based on (b)(1), it can also be proper here if the requirements of (b)(2) are met.
We turn then, to the question of whether venue is proper under (b)(2). It is clear that the 1990 Amendments changed the venue rules as to (b)(2) so that venue can now be laid in more than one district, so long as each has a substantial relationship to the action. Cottman Transmission Sys. v. Martino, 36 F.3d 291, 294 (3d Cir.1994). What did not change, however, was that the venue rules are designed to be fair to the defendant, so that one is not "haled into a remote district having no real relationship to the forum." Id.
Plaintiffs argue that substantial events occurred within the Eastern District in that the PMMB: created Area # 1, which exists entirely within the Eastern District; set the minimum consumer prices to be paid within the Eastern District; used data from milk dealers within the Eastern District to set the minimum prices; and because all allegedly unconstitutional overcharges to the School District are made within the Eastern District. In addition, according to Plaintiffs, all of the evidence to support their claims is within the Eastern District. Defendants assert that because the PMMB sits in the Middle District and because the capital is in the Middle District that venue is proper there. They argue that only the impact of acts taken within the Middle District are felt in the Eastern District. Impact, they argue is insufficient to vest venue. Leroy v. Great Western United Corp., 443 U.S. 173, 184, 99 S.Ct. 2710, 2716, 61 L.Ed.2d 464 (1979).
Defendants' argument ignores the fact that under the 1990 Amendments to (b)(2), a case need not be tried in the best place, but merely a place with substantial contacts. The "`fact that substantial activities took place in district B does not disqualify district A as proper venue as long as substantial activities took place in A, too ... even if it is shown that the activities in B were more substantial.'" Database America *250 v. Bellsouth Advertising & Publ., 825 F.Supp. 1216, 1224 (D.N.J.1993) (quoting Siegel, Commentary of 1990 Revision of Subdivisions (a), (b), and (e), in 28 U.S.C. 1391, at 4.)
We find that substantial acts giving rise to the action did occur in the Eastern District. Accordingly, venue is proper here under (b)(2), and we DENY this aspect of Defendants' Motion to Dismiss.

STANDING
In order to maintain a suit in federal court, each plaintiff must have standing to sue. This requirement ensures that federal courts only hear actual cases and controversies. U.S. Const. art. III. To show standing, a plaintiff must allege a "distinct and palpable injury" to itself. Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).
Defendants argue that they, as an agency of the Commonwealth and the officials of that agency, (31 Pa.Cons.Stat.Ann. §§ 700j-103, 700j-201, 700j-203) cannot be sued by another arm of the Commonwealth, namely the School District. Northwestern School Dist. v. Pittenger, 397 F.Supp. 975, 979 (1975). Almost exclusively, the United States Supreme Court and all other courts have held that part of a state cannot sue another part of the state for Constitutional violations. See e.g., Hunter v. Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907); Trenton v. New Jersey, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923); Williams v. Mayor and City Counsel of Baltimore, 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015 (1933).
In recent years, however, a split has developed among the circuits on this issue. The Fifth Circuit started the split when it held that the Supreme Court cases cited above were not actually rulings on the issue of standing, but "substantive interpretations of the constitutional provisions involved." Rogers v. Brockette, 588 F.2d 1057, 1068 (5th Cir.); cert. denied, 444 U.S. 827, 100 S.Ct. 52, 62 L.Ed.2d 35 (1979). The Fifth Circuit held that, based on the facts in Rogers, that a school district would be permitted to sue the state for Constitutional violations. Id. at 1071.
The Third Circuit has not ruled on this particular issue. The closest case is Allegheny County Sanitary Authority v. EPA, 732 F.2d 1167 (3d Cir.1984). There, a state Authority (a municipality) sued the Commonwealth on state and federal law claims. State statute gave the Authority the power to "sue and be sued, implead and be impleaded, complain and defend in all courts." 53 Pa.Stat.Ann. § 306. The Third Circuit held that this statute conferred upon the authority unlimited power to sue anyone, including the State. This case is inalogous to the instant case, however, for two main reasons. First, the School District's claims are exclusively Constitutional, not state or federal law. Second, the School District is expressly given "only such powers and authority as are granted to it by the legislature." Kaufman v. Central Susquehanna Intermediate Unit, 144 Pa.Cmwlth. 163, 166, 601 A.2d 412, 414 (1991). The School District's authority to sue is not as broad as the Authority's, being limited to "the right to sue and be sued in its corporate name." 24 Pa.Stat.Ann. § 2-213.
Pennsylvania courts have consistently ruled that a school district has no rights under the federal constitution to assert against the State. Penn-Delco School District v. Schukraft, 95 Pa.Commw. 619, 626, 506 A.2d 956, 960 (1986), app. denied, 514 Pa. 644, 523 A.2d 1133 (1987). Likewise, district courts applying Pennsylvania law have held that school districts cannot bring Constitutional claims against the State. Northwestern School District v. Pittenger, 397 F.Supp. 975, 979 (W.D.Pa.1975).
Apart from arguing that we should not apply the above cited cases to this action, Plaintiffs argue that the School District has standing due to its status as a consumer of milk. They do not cite any caselaw other than Rogers[2] to support this apparently novel theory, and we reject it.
*251 We hold that under the above cited precedent, the School District cannot sue the PMMB. Both the School District and the PMMB were created by the Commonwealth's legislature with specific duties granted to them. The State is the head of the School District, and it has chosen to create the PMMB to set minimum prices. A creation of the State cannot challenge its maker's decisions on Constitutional grounds.
Accordingly, we hold that the School District does not have standing to raise Constitutional objections against its creator, the State. For this reason, we dismiss the School District as a plaintiff from this case.[3] There are, however, two individual plaintiffs and one intervenor plaintiff remaining who do have standing to sue under § 1983; accordingly, we will continue to examine the rest of Defendants' Motion to Dismiss.

ELEVENTH AMENDMENT
Defendants assert that "[i]t is clearly established law that `in the absence of consent, a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.'" They argue that this general rule applies here to bar this suit because Pennsylvania has not waived its sovereign immunity. 42 Pa.Cons.Stat.Ann. § 8521(b) (1982).[4]
Inexplicably, however, Defendants fail to acknowledge the equally well established rule that "the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." Green v. Mansour, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985). Courts may also grant monetary relief if it is ancillary to the main prospective relief requested. Id.
In this suit, Plaintiffs assert violations of the Commerce Clause, the Fourteenth Amendment and § 1983. They seek declaratory and injunctive relief, as well as attorneys fees. These Constitutional claims seek prospective and ancillary relief only. Accordingly, they can be maintained despite the Eleventh Amendment, therefore, we DENY this portion of Defendants' Motion to Dismiss.

COMMERCE CLAUSE
Defendants argue that the Amended Complaint's Commerce Clause claim fails to state a claim upon which relief can be granted. In considering a 12(b)(6) motion, a court must primarily consider the allegations contained in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir.1990).
In ruling upon such a motion, the Court must accept as true all of the allegations in the pleadings and must give the *252 plaintiff the benefit of every favorable inference that can be drawn from those allegations. Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir.1991); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir.1990). A complaint is properly dismissed only if it appears certain that the plaintiff cannot prove any set of facts in support of its claim which would entitle it to relief. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir.1988).
In order to maintain their Commerce Clause claim, Plaintiffs will have to show that they can prove a set of facts to support one of two theories. First, a state law can violate the Commerce Clause if it "directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests." Brown-Forman Distillers v. New York, 476 U.S. 573, 578-79, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1986) (citing Philadelphia v. New Jersey, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978)) (emphasis added). Second, a law can violate the Commerce Clause even when the statute only "has indirect effects on interstate commerce and regulates evenhandedly." Id. (citing Pike v. Bruce Church, Inc., 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970)). If this is the case, courts examine whether the "State's interest [in the regulation] is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." Id. The line between the two types of impermissible regulation is often murky. Id. at 579, 106 S.Ct. at 2084.
Defendants assert without further argument that the statute creating the PMMB does not specifically regulate or discriminate against interstate commerce or "explicitly favor in-state economic interests over out-of-state interests; therefore, it is not per se invalid under the Commerce Clause." Defendants' Brief in Opposition at 18. Defendants also assert that the law does not "indirectly impose burdens upon interstate commerce to an impermissible degree." Id. at 19.
They cite Highland Farms Dairy v. Agnew, 300 U.S. 608, 57 S.Ct. 549, 81 L.Ed. 835 (1937) as support for their second argument. In that case, a Virginia law established minimum prices for milk resold in Virginia. The law warned that none of its provisions could be construed to apply to interstate commerce. Id. at 610, 57 S.Ct. at 550. In accordance with that provision, the Virginia authorities informed Highland, a Washington D.C. creamery, that it did not need to comply with the act. Id. at 611, 57 S.Ct. at 551. Nonetheless, the creamery (along with High, a Virginia-based retailer) sued to enjoin enforcement of the act. Id. The Supreme Court held that the act did not impose a burden on interstate commerce because the out-of-state plaintiff had been exempted from compliance with the law, and therefore, only in-state re-sale prices by in-state sellers were regulated. Id. at 615, 57 S.Ct. at 552.
We do not understand why Defendants rely so heavily on this case. It would seem to support Plaintiffs' theory that the instant regulations do impose burdens on interstate commerce. In Highland, the Supreme Court specifically held that the Commerce Clause was not violated solely because Virginia explicitly exempted all interstate commerce from the act's coverage. Here, where the resale prices of out-of-state sellers are regulated along with the re-sale prices of in-state sellers, this holding would seem to indicate that the Commerce Clause is violated.
More helpful to Defendants's position, but uncited by them, is dicta in Brown-Forman, where the Supreme Court mentions in passing that "New York may regulate the sale of liquor within its borders, and may seek low prices for its residents." 476 U.S. at 582, 106 S.Ct. at 2086. This could be read as permission for the type of regulation at issue here.
In turn, Plaintiffs argue that the PMMB enacting statute is per se invalid because it demonstrates a protectionist intent on its face. They argue first, that the minimum prices imposed on both in-state and out-of-state dealers are set by reference to operations of in-state milk dealers only, and second, that the statute specifically states that its purpose is to "best protect the milk industry of the Commonwealth." 31 Pa.Stat.Ann. § 700j-801.
In addition, Plaintiffs argue that the effect of the regulations impermissibly burdens interstate *253 commerce. For support on this point, they rely heavily on State of New York v. Brown, 721 F.Supp. 629, 640-41 (D.N.J. 1989), which is the most factually similar case to the one at bar. There, the District Court for New Jersey held that minimum milk prices set by New Jersey were not a direct regulation or discrimination against out-of-state economic interests. This finding was based on the fact that the minimum prices were based on each individual dealer's own costs, whether in-state or out-of-state, not on the costs of in-state dealers.
Despite finding that the regulation did not directly violate the Commerce Clause, the Court declined to grant summary judgment on the Commerce Clause Claim entirely. Id. at 643. It held that it did not have an adequate factual basis on which to determine whether the putative benefits of the regulation were outweighed by any incidental effects on interstate commerce and retained the case pending further discovery. Id. at 644.[5]
At this stage, before there has been any factual development of the case, we cannot hold that Plaintiffs will not be able to prove a set of facts to support their arguments. Plaintiffs, for example, might show that the law directly violates the Commerce Clause because of its allegedly protectionist language and/or intent, or because out-of-state dealers' minimum prices are set by in-state-dealers' costs. Plaintiffs might also show that there is an indirect violation of the Commerce Clause because the burdens the regulations place on interstate commerce outweigh any benefits of the minimum prices. Brown, 721 F.Supp. at 643. Accordingly, we do not dismiss Plaintiffs' Commerce Clause claim for failure to state a claim for which relief can be granted.

FOURTEENTH AMENDMENT
Plaintiffs' Amended Complaint states that Defendants' actions deprive Plaintiffs of both substantive and procedural due process, as well as rights to equal protection of the laws, all of which are guaranteed by the Fourteenth Amendment. Defendants assert that Plaintiffs have not stated a claim for which relief can be granted on any of these claims.

A. Procedural Due Process
Defendants move to dismiss Plaintiffs' procedural due process claim, but do not support this motion with any argument. In turn, Plaintiffs fail to support their procedural due process claim with any argument. We find that dismissal of this claim is appropriate because the Amended Complaint does not adequately state a claim for lack of procedural due process.
Procedural due process protects people from deprivations of life, liberty or property without due process of law. U.S. Const. amend. XIV; Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). The amount of process that is due depends on the nature of the interest at stake, but a notice of the deprivation and a hearing on the subject are the "root requirements" to comply with procedural due process. Id. (citing Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)).
*254 Here, neither the Amended Complaint nor Plaintiffs' Brief define what interest is being deprived. Nor do they explain what process is missing from the alleged deprivations. We find that Plaintiffs' Amended Complaint is missing the fundamental allegations necessary to support a procedural due process claim; accordingly, we GRANT this portion of Defendants' Motion to Dismiss.

B. Substantive Due Process and Equal Protection of the Laws
Defendants also argue that Plaintiffs' substantive due process claim and equal protection claim must fail because Plaintiffs' Amended Complaint does not demonstrate that the minimum milk prices are discriminatory or that the regulations are wholly arbitrary or irrelevant. We address these two claims together because the standard for a challenge to economic legislation under each theory is "virtually identical." In re Wood, 866 F.2d 1367, 1371 (11th Cir.1989).
Defendants assert that if this Court can conceive of any set of facts that would support the regulations, that they are valid. United States v. Carolene Prods., 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). Because the avowed purpose of the minimum milk prices is to insure sufficient milk to Pennsylvania (with special regard for its children) and to protect the milk industry, and because minimum milk prices can be seen to aid those goals, Defendants argue Plaintiffs' substantive due process claim must be dismissed.
Under modern jurisprudence, if the challenged economic regulation furthers a legitimate public goal and is reasonably directed to meet that goal, the regulation passes muster under both substantive due process and equal protection. Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1372, 4 L.Ed.2d 1435 (1960).
Plaintiffs argue, without elaboration or legal citation, that because there is a surplus of fresh milk in the entire East Coast, including Area # 1, and because there is no proof that dairy farmers or dealers currently need price protections, that the minimum prices fixed by the PMMB are arbitrary and serve no legitimate public purpose. They argue, therefore, that dismissal of these claims is inappropriate.
We find that minimum prices can rationally be seen to further the admittedly legitimate public goal of ensuring a fresh milk supply to the children of the Commonwealth.[6] It follows from this finding that Plaintiffs would be unable, after discovery, to provide any set of facts that would support their claim that the minimum prices violate substantive due process. Accordingly, the Motion to dismiss on this claim will be granted.
An appropriate Order follows.

ORDER
AND NOW, this 14th day of February, 1995, upon consideration of Defendants' Motion to Dismiss the Amended Complaint and responses thereto, the Motion is hereby GRANTED in part and DENIED in part as detailed in the attached memorandum.
Defendants' Motion to Dismiss is hereby DENIED as to improper venue, Eleventh Amendment immunity and failure to state a claim for which relief can be granted under the Commerce Clause and 28 U.S.C. § 1983. Defendants' Motion to Dismiss is hereby GRANTED as to the School District of Philadelphia's lack of standing to sue, and all Plaintiffs' failure to state a claim for which relief can be granted under the Fourteenth Amendment.
The School District of Philadelphia is hereby DISMISSED as a PLAINTIFF.
NOTES
[1] We are aware that the Second Circuit follows the disjunctive theory. Welch Foods, Inc. v. Packer, No. 93-0811E(F), 1994 WL 665399 at *2 (W.D.N.Y. Nov. 22, 1994) (citing cases). We do not find their reasoning to be more persuasive than the reasoning of our own district court, however, and decline to join them.
[2] In turn, in a footnote, Rogers cites Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960); a case involving racial gerrymandering of voting districts. Gomillion only marginally supported Rogers's holding, but has virtually no impact on this action.
[3] In addition to the above decision, we also find that the School District does not have standing to sue under § 1983 because it is not a "person" that can sue (as opposed to be sued) within the meaning of that statute. See Housing Authority of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1192 (10th Cir.1991), cert. denied, 504 U.S. 912, 112 S.Ct. 1945 (1992); United States v. State of Alabama, 791 F.2d 1450, 1455 (11th Cir.1986), cert. denied, 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 144 (1987); Commonwealth v. Porter, 659 F.2d 306, 327 n. 3. (3d Cir.1981) (concurring and dissenting op.), cert. denied, 458 U.S. 1121, 102 S.Ct. 3509, 73 L.Ed.2d 1383 (1982).

Plaintiffs merely argue that "in the event [the School District] prevails in this litigation, it should not be precluded from recovering reasonable attorney's fees [under 28 U.S.C. § 1988] merely because it happens to be an entity which also exercises governmental powers, but in other capacities." Plaintiffs' Brief at 13. In each of Plaintiffs' cases regarding standing to sue under § 1983, the plaintiff is a private party, not an arm of the state. Because of this, Plaintiffs' cases do not support the School District's assertion of standing. We find that the School District is not a person that can sue within the meaning of § 1983. Accordingly, the School District's claim under Count Three must be dismissed on this ground as well.
[4] Defendants cite Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) in support of their argument. This case holds that the Eleventh Amendment effectively bars all kinds of suits against a State when violations of state law are alleged. Id. at 106, 104 S.Ct. at 911. This is not the case here, where violations of the United States Constitution are alleged, so it is irrelevant to this issue.
[5] Other cases cited by the litigants are not overly helpful to their positions because of the different factual backgrounds. In Brown-Forman, for example, the Supreme Court held that a New York law, which required all liquor distillers and producers selling liquor within New York to affirm every month that they would not sell liquor within New York at a price higher than the lowest price they would charge elsewhere in the United States, violated the Commerce Clause because the regulation dictated prices in other states. 476 U.S. at 583, 106 S.Ct. at 2086. This case does not help the issues in this litigation because the Amended Complaint does not allege that Pennsylvania attempts to set prices directly or indirectly in other states.

Likewise, Baldwin v. G.A.F. Seelig, Inc., 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935) does not further our resolution of these issues. That case invalidated a New York law that prohibited the resale of imported milk unless the importing dealer had paid the foreign producer the same price that New York dealers were required to pay New York producers. The Supreme Court held that this created a barrier to interstate commerce and violated the Commerce Clause. Id. at 521, 55 S.Ct. at 499. This is not the situation here, where there is no allegation that the PMMB attempts to set the prices consumers in other states pay.
[6] Because of this finding, it is irrelevant whether the Commonwealth also has a legitimate interest in protecting Pennsylvania's milk industry.