728 A.2d 351

**Henry HALLER, Felice Newman and Steve Zupcic, Individuals, Appellees,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF REVENUE, and Robert A. Judge, Sr., Secretary of the Department of Revenue, in his official capacity, Appellants.**

Supreme Court of Pennsylvania.

Argued April 28, 1998.

Decided April 21, 1999.

Gregory R. Neuhauser, Sr., Dep. Atty. Gen., John G. Knorr, III, Chief Dep. Atty. Gen., for Dept. of Revenue et al.

David J. Millstein, Witold J. Walczak, co-counsel, Pittsburgh, Haller Newman and Zupic.

Before FLAHERTY, C.J., and ZAPPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

This case presents a constitutional challenge to Pennsylvania's sales tax exemption for "the sale at retail or use of religious publications sold by religious groups and Bibles and religious articles." [1] We affirm the Commonwealth Court's determination that this tax exemption violates the Establishment Clause of the United States Constitution. [2]

Appellees are taxpayers who publish and purchase books that do not qualify for the tax exemption. [3] Appellees institut-

---

**1.** Section 204(28) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7204(28), contains the exemption in question, and provides:

> The tax imposed by section 202 shall not be imposed upon
>
> $$* \qquad * \qquad *$$
>
> (28) The sale at retail or use of religious publications sold by religious groups and Bibles and religious articles.

The Department of Revenue's regulation pertaining to this exemption is found at 61 Pa.Code § 31.3(22), and provides:

> The tax does not apply to the following:
>
> $$* \qquad * \qquad *$$
>
> (22) Religious publications sold by religious groups. Sales or use of bibles and religious articles are exempt.

**2.** The Establishment Clause of the First Amendment of the United States Constitution provides, "Congress shall make no law respecting an establishment of religion...." U.S. Const. amend. I. This prohibition applies to state governments by operation of the Fourteenth Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

**3.** Appellee Haller was dismissed from the case for lack of standing. That dismissal is not implicated in this appeal.

ed this action in Commonwealth Court against the Pennsylvania Department of Revenue, seeking an injunction prohibiting enforcement of the tax exemption and a declaratory judgment that the exemption violated: (1) the Establishment Clause of the United States Constitution; (2) Article I, Section 3 of the Pennsylvania Constitution; (3) the Press Clause of the United States Constitution;[4] and, (4) Article I, Section 7 of the Pennsylvania Constitution. The parties stipulated that the Department of Revenue interprets the phrase "Bible" as used in the statute and regulation to encompass the sacred texts of all religious groups, and that the Department does not discriminate against any religious groups in its enforcement of the statute and regulation.

The Commonwealth Court, *en banc*, ruled that the tax exemption violated the Establishment Clause of the United States Constitution.[5] Relying primarily on the United States Supreme Court's opinion in *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989), the majority of the Commonwealth Court found that the tax exemption fails to serve a secular purpose and therefore does not pass the constitutional bar of the Establishment Clause. Two judges of the Commonwealth Court dissented, arguing that the exemption is similar to one that the Court upheld against an Establishment Clause challenge in *Walz v. Tax Commission of City of New York*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970), and noting that Justice Brennan's opinion in *Texas Monthly* was a plurality opinion and, therefore, not strictly binding authority. The dissenters further opined that Establishment Clause jurisprudence has created a "neutral zone" with respect to a government's decision to tax, or to exempt, religious institutions, and that the Court's opinions in *Walz* (upholding a tax exemption that included religious institutions against an Establishment Clause challenge) and *Jimmy Swaggart Ministries v. Board of Equalization of California*, 493

4. The Press Clause of the First Amendment of the United States Constitution provides, "Congress shall make no law ... abridging the freedom of speech, or of the press...." U.S. CONST. amend. I.

5. Because of its disposition of Appellees' challenge, the Commonwealth Court did not address Appellees' remaining constitutional claims.

U.S. 378, 110 S.Ct. 688, 107 L.Ed.2d 796 (1990) (denying a Free Exercise Clause [6] challenge to a generally-applicable tax), set the boundaries of this "zone." According to the dissenters, the Pennsylvania legislature's decision to exempt religious publications sold by religious groups and Bibles and religious articles fits within this permissible zone.

For twenty-six years, the starting point for analysis of all Establishment Clause challenges was with the standard established in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). The *Lemon* test required that, in order for a government action to survive an Establishment Clause challenge, the state needed to show (1) that it serves a secular purpose; (2) that its principal or primary effect is one that neither advances nor inhibits religion; and, (3) that it does not foster an excessive government entanglement with religion. *Id.* at 612–13, 91 S.Ct. 2105. However, in 1997, the United States Supreme Court issued an opinion in which it recognized that its Establishment Clause jurisprudence had "significantly changed" during the past decade. *Agostini v. Felton*, 521 U.S. 203, 117 S.Ct. 1997, 2017, 138 L.Ed.2d 391 (1997). In *Agostini*, the Court reevaluated whether permitting public school teachers in Title I special education programs to teach inside the classrooms of sectarian schools violated the Establishment Clause, as the Court had explicitly held in *Aguilar v. Felton*, 473 U.S. 402, 105 S.Ct. 3232, 87 L.Ed.2d 290 (1985). The Court acknowledged that subsequent decisions from the Court undermined some of the assumptions that underpinned *Aguilar*, particularly the presumption that "public employees will inculcate religion simply because they happen to be in a sectarian environment." *Agostini*, 117 S.Ct. at 2016. With respect to New York City's Title I program, the Court concluded

[the program] does not run afoul of any of three primary criteria we currently use to evaluate whether government aid has the effect of advancing religion it does not result in

---

**6.** The Free Exercise Clause of the First Amendment follows the Establishment Clause; the two clauses provide, "Congress shall make no law respecting an establishment of religion, nor prohibiting the free exercise thereof...." U.S. Const. amend. I.

governmental indoctrination; define its recipients by reference to religion; or create an excessive entanglement.

*Id.*

The relevant question here is whether this "significant" change in Establishment Clause jurisprudence recognized in *Agostini* represents the end of the *Lemon* test, or is merely a revision to the Court's analysis of government aid programs within the *Lemon* framework. The importance of this question is in determining whether the *Texas Monthly* decision, which was built solidly on the foundation of the *Lemon* test, still stands, or whether the Court has declared that constitutional structure to be unsound.

It appears that, despite the language in *Agostini* announcing significant changes in Establishment Clause jurisprudence, the Court has not yet abandoned the guidelines from *Lemon.* First, the Court had the opportunity to eliminate *Lemon,* in the same manner that it explicitly overruled *Aguilar,* but it did not do so. Indeed, all citations to *Lemon* in *Agostini* are either neutral or favorable, and not critical. Second, the focus of *Agostini* is specifically on government special education programs and the constitutional restraints on how this aid may be provided to students in sectarian schools, and not on a fundamental revision of all disputes implicating the Establishment Clause.[7] Finally, other courts considering the question have determined that *Lemon* remains good law in the wake of *Agostini. See Rojas v. Fitch,* 127 F.3d 184 (1 st Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 2341, 141 L.Ed.2d 713 (1998).

Since the *Lemon* test still stands, we must address the problem raised by the disagreement below and reconcile *Walz* with the plurality opinion in *Texas Monthly.* In *Walz,* which was decided before *Lemon,* the Court upheld, in the face of an

7. The Court held:
> [w]e therefore hold that a federally funded program providing supplemental, remedial instruction to disadvantaged children on a neutral basis is not invalid under the Establishment Clause when such instruction is given on the premises of sectarian schools by government employees pursuant to a program containing safeguards such as those present here.

*Agostini,* 117 S.Ct. at 2016.

Establishment Clause challenge, a New York property tax exemption that covered:

> [r]eal property owned by a corporation or association organized exclusively for the moral or mental improvement of men and women, or for religious, bible, tract, charitable, benevolent, missionary, hospital, infirmary, educational, public playground, scientific, literary, bar association, medical society, library, patriotic, historical or cemetery purposes. . . .

*Walz*, 397 U.S. at 667, n. 1, 90 S.Ct. 1409. In holding that the exemption did not offend the Establishment Clause, the Court observed that:

> [i]t has not singled out one particular church or religious group or even churches as such; rather, it has granted exemption to all houses of religious worship within a broad class of property owned by nonprofit, quasi-public corporations which include hospitals, libraries, playgrounds, scientific, professional, historical, and patriotic groups.

*Id.* at 672–73, 90 S.Ct. 1409. The Court also noted that "[t]here is no genuine nexus between tax exemption and establishment of religion," and that "[t]he grant of a tax exemption is not sponsorship since the government does not transfer part of its revenue to churches but simply abstains from demanding that the church support the state." *Id.* at 675, 90 S.Ct. 1409.

When presented with an Establishment Clause challenge to Texas' tax exemption for "[p]eriodicals that are published or distributed by a religious faith and that consist wholly of writings promulgating the teaching of the faith and books that consist wholly of writings sacred to a religious faith," *Texas Monthly*, 489 U.S. at 5, 109 S.Ct. 890, the Court attempted to reconcile the holding of *Walz* with the Establishment Clause standard promulgated in *Lemon*. The "secular purpose" prong of the *Lemon* test posed a difficult problem to the Court's effort to harmonize the broad language from *Walz* respecting tax exemption of churches with the principle that legislation designed specifically and exclusively to benefit religion violated the Establishment Clause. Justice Brennan,

author of the plurality opinion in *Texas Monthly,* relied on the breadth of the tax exemption involved in *Walz* to distinguish it from Texas' narrow exemption. As Justice Brennan noted:

[t]he breadth of New York's property tax exemption was essential to our holding that it was "not aimed at establishing, sponsoring, or supporting religion," ... but rather possessed the legitimate secular purpose and effect of contributing to the community's moral and intellectual diversity and encouraging private groups to undertake projects that advanced the community's well-being and that would otherwise have to be funded by tax revenues or left undone.

*Texas Monthly,* 489 U.S. at 12, 109 S.Ct. 890 (citing *Walz,* 397 U.S. at 674, 90 S.Ct. 1409). Texas' tax exemption, by contrast, lacked "a secular objective that would justify this preference along with similar benefits for nonreligious publications or groups." 489 U.S. at 17, 109 S.Ct. 890. Because the Texas tax exemption was limited to religious periodicals, Justice Brennan concluded that it lacked "sufficient breadth to pass scrutiny under the Establishment Clause." *Id.* at 14, 109 S.Ct. 890.

In a strenuous dissent, Justice Scalia argued that Justice Brennan had misinterpreted the holding of *Walz,* and that the Texas exemption did serve a secular purpose: the "accommodation of religion." *Id.* at 40, 109 S.Ct. 890. Contrary to Justice Brennan's interpretation that the *Walz* Court had upheld the New York tax exemption because it included both religious and secular organizations, Justice Scalia countered that, "[t]he Court did not approve an exemption for charities that happened to benefit religion; it approved an exemption for religion as an exemption for religion." *Id.* at 38, 109 S.Ct. 890. Complaining that *Walz* had established categorical approval of religious tax exemption, and criticizing Justice Brennan's "breadth of coverage" approach, Justice Scalia wrote, "if the Court [in *Walz* ] had intended to rely upon a 'breadth of coverage' rationale, it would have had to identify some characteristic that rationally placed religion within the same policy category as the other institutions." *Id.* at 36–37, 109 S.Ct. 890.

■ Presently, the Department of Revenue contends that because Justice Brennan's opinion in *Texas Monthly* was a plurality opinion, we need not follow it in determining whether Pennsylvania's tax exemption violates the Establishment Clause. We disagree. Although Justice Brennan's opinion garnered the votes of only two other Justices, it would be incorrect to conclude that the "breadth of coverage" standard did not have the support of a majority of the Court. As Justice Blackmun, joined by Justice O'Connor, noted in his Concurring Opinion in *Texas Monthly*, "[i]n this case, by confining the tax exemption exclusively to the sale of religious publications, Texas engaged in preferential support for the communication of religious messages." *Id.* at 28, 109 S.Ct. 890. Moreover, even Justice Blackmun's more limited interpretation of the Court's holding in *Texas Monthly* conceded the "breadth of coverage" problem: "[w]e need decide here only whether a tax exemption limited to the sale of religious literature by religious organizations violates the Establishment Clause. I conclude that it does." *Id.* Thus, a majority of the Court in *Texas Monthly* clearly recognized that tax exemptions that include religious organizations must have an overarching secular purpose that equally benefits similarly situated nonreligious organizations, and other courts interpreting *Texas Monthly* have so held. *See Finlator v. Powers,* 902 F.2d 1158 (4 th Cir.1990) (striking down North Carolina's tax exemption for "Holy Bibles"); *Thayer v. South Carolina Tax Commission,* 307 S.C. 6, 413 S.E.2d 810 (1992) (striking down South Carolina's use tax exemption for religious publications); *but cf. Rojas v. Fitch,* 127 F.3d 184, 189 (1 st Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2341, 141 L.Ed.2d 713 (1998) ("[w]e decline ... to read *Texas Monthly* as requiring that a provision incidentally benefiting religion must grant a like benefit to every group that could also conceivably fall within the secular rationale for the exemption provision").[8]

***

**8.** In *Rojas,* the First Circuit upheld Rhode Island's exemption for religious employers from its mandatory unemployment compensation scheme, concluding that employees of religious organizations were included with other types of employees "whose employment patterns are irregular or whose wages are not easily accountable." *Rojas,* 127

We recognize that the dissenters below had reasonable grounds for contending that the Establishment Clause does not categorically prohibit legislation that *exclusively* benefits religious organizations because in some circumstances legislatively created exemptions that benefit religious organizations or religious practices have survived Establishment Clause challenges. *See Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987) (exemption of religious organizations from federal employment discrimination legislation upheld). However, where the exemption at issue is a tax exemption, and a religious organization benefits from that exemption, the *United States Supreme* Court has required that the tax exemption be sufficiently broad to encompass similar secular organizations. *See Texas Monthly, supra.* The Supreme Court appears to have been more skeptical of sales tax exemptions than other legislative exemptions that exclusively favor religion because sales tax exemptions are not needed to lift a significant restraint on religious activity, and they impose a "substantial burden" upon nonbeneficiaries by increasing their tax burden. See *Texas Monthly*, 489 U.S. at 18 n. 8, 109 S.Ct. at 901 n. 8. Regardless, our function is to apply the standard promulgated by the Court for analyzing religiously based tax exemptions, and to apply *Texas Monthly* to this case.

F.3d at 188. The court determined that the overall secular purpose of this exemption was "reducing difficulties in administering an unemployment insurance program," and that "when a 'wide array' of groups are benefited by a provision that pursues a single, unifying, secular end, one of those groups may indeed be religious institutions." *Id.*

We question whether categorically placing employees of religious institutions with casual employees ostensibly for the secular purpose of administrative convenience is too contrived. Surely not all employees of religious organizations work irregular hours for irregular pay, and it is conceivable that an exemption for casual employees that was based on part-time status or hourly wages would better serve the purpose of administrative convenience while remaining religion-neutral. The First Circuit did not address this problem, and it is precisely the sort of difficulty that Justice Scalia indicated in his dissent in *Texas Monthly*—that courts would have to inquire too deeply into whether religious organizations rationally fit within the broader class of nonreligious organizations who were exempt.

■ Turning to Pennsylvania's tax exemption, we find that it suffers from the same defects as the Texas exemption. The exemption pertains only to the "sale at retail or use of religious publications sold by religious groups and Bibles and religious articles." 72 P.S. § 7204(28). We find here the same preference for communication of religious messages that the United States Supreme Court found violative of the Establishment Clause in *Texas Monthly*.[9] The same five Justices who endorsed a breadth of coverage analysis explicitly found Texas' similar exemption violative of the Establishment Clause,[10] and we are obliged to follow binding precedent on this federal constitutional issue.

Nor does the fact that the legislature has exempted a variety of unrelated items from the tax, ranging from caskets (72 P.S. § 7204(31)) to brook trout (72 P.S. § 7204(42)), save this particular exemption. Justice Brennan addressed this precise issue in *Texas Monthly:*

> [t]he fact that Texas grants other sales tax exemptions (e.g., for sales of food, agricultural items, and property used in the manufacture of articles for ultimate sale) for different purposes does not rescue the exemption for religious periodicals from invalidation. What is critical is that any subsidy afforded religious organizations be warranted by some overarching secular purpose that justifies like benefits for nonreligious groups.

**9.** We note that this section also provides exemptions for newspapers (72 P.S. § 7204(30)), textbooks (72 P.S. § 7204(33)), and magazines (72 P.S. § 7204(50)), but not for other kinds of books or publications generally, which are taxed. These exemptions do not rescue the instant exemption, however, because unlike the religious publications exemption, these exemptions are content-neutral, and we can discern no broader secular purpose that would fairly encompass all these exemptions in a single scheme.

**10.** *See Texas Monthly*, 489 U.S. at 25, 109 S.Ct. at 905 (Brennan, J., joined by Marshall and Stevens, JJ., setting forth the Court's holding in a plurality opinion, and stating, "We conclude that Texas' sales tax exemption for religious publications violates the First Amendment"); Id. at 29, 109 S.Ct. at 907 (Blackmun, J., joined by O'Connor, J., "concur[ring] in the holding that [the Texas statute] contravenes the Establishment Clause").

*Texas Monthly,* 489 U.S. at 15, n. 4, 109 S.Ct. 890. Comparable to the deficient Texas exemption, Pennsylvania's exemption does not extend to publications by nonreligious groups, which are taxed, and therefore also lacks the requisite breadth for this to be anything but legislation intended solely to provide tax relief to religious organizations. Lacking a broader secular purpose, this exemption cannot survive an Establishment Clause challenge pursuant to the United States Supreme Court's holding in *Texas Monthly.*

We do not suggest that the Establishment Clause prohibits the Pennsylvania legislature from exempting religious publications from taxation. If the legislature does so in a way that benefits nonreligious publications equally with religious publications, and provided that there is an overall secular purpose, such an exemption would pass Establishment Clause scrutiny. Justice Brennan hinted at such a solution in *Texas Monthly:*

> [h]ow expansive the class of exempt organizations or activities must be to withstand constitutional assault depends upon the State's secular aim in granting a tax exemption. If the State chose to subsidize, by means of a tax exemption, all groups that contributed to the community's cultural, intellectual, and moral betterment, then the exemption for religious publications could be retained, provided that the exemption swept as widely as the property tax exemption we upheld in *Walz.*

489 U.S. at 15–16, 109 S.Ct. 890. Likewise, Justice Blackmun noted that there is room for the state to draft a sufficiently broad exemption that would include religious publications and simultaneously withstand Establishment Clause and Press Clause [11] challenges:

> [i]t is possible for a State to write a tax-exemption statute consistent with both [Establishment Clause and Free Exercise Clause] values: for example, a state statute might

---

11. The Press Clause challenge, raised by Appellees below but not addressed here, concerns the constitutionality of content-based tax exemptions for publications. *See Arkansas Writers' Project, Inc. v. Ragland,* 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987).

exempt the sale not only of religious literature distributed by a religious organization but also philosophical literature distributed by nonreligious organizations devoted to such matters of conscience as life and death, good and evil, being and nonbeing, right and wrong. Such a statute, moreover, should survive Press Clause scrutiny because its exemption would be narrowly tailored to meet the compelling interests that underlie both the Free Exercise and Establishment Clauses.

*Id.* at 27–28, 109 S.Ct. 890. Indeed, the Texas legislature amended the tax exemption at issue in *Texas Monthly* by redrafting the statute to exempt literature based upon the type of organization that produces it, as opposed to its content.[12] By classifying exempt items in this fashion, the Texas legislature has avoided giving preferential treatment to certain texts based solely on the messages that they contain, thus minimizing the potential for conflict with other First Amendment principles identified in Supreme Court jurisprudence. However, the tax exemption challenged here lacks the requisite breadth, and it is the role of the Pennsylvania legislature, and not the function of this Court, to remedy this deficiency.

Accordingly, we affirm the Commonwealth Court.

---

**12.** The Texas statute now reads: "Periodicals and writings that are published or distributed by a religious, philanthropic, charitable, historical, scientific, or other similar organization that is not operated for profit, but excluding an educational organization, are exempted from the taxes imposed by this chapter." Tex. Tax Code Ann § 151.312 (West 1992).