## Appeal of Cornerstone Television Inc.

C.P. of Allegheny County, no. GD98-19070.

*Joseph L. Luciana III,* for Cornerstone Television.
*Jack Finnegan,* for Wall Borough.
*Isobel Storch,* for East Allegheny School District.
*Terrence F. McVerry,* for Allegheny County.

WETTICK JR., *J.,* December 13, 2001—This litigation involves a real estate tax exemption claim raised by a nonprofit corporation which owns a television station that it uses for broadcasting religious programs. The taxing bodies raise two arguments in support of their claim that the property is not exempt: (1) under applicable state legislation, the property does not qualify for tax-exempt status and (2) the state and federal constitutions bar the legislature from giving tax-exempt status to property used for religious programming. As I will discuss in part I of this opinion, under applicable state legislation, the property is exempt. As I will discuss in part II of this opinion, political subdivisions have no standing to challenge the constitutionality of provisions of state legislation granting tax exemptions.

I.

Cornerstone Television Inc. filed an application with the Allegheny County Board of Property Assessment, Appeals and Review for a real estate tax exemption for property used within the Borough of Wall for television broadcasting of religious programming. The application

was denied by the board on the ground that the property does not qualify for exemption under state legislation. Cornerstone filed an appeal to this court.

The matter was assigned to me for a non-jury trial. The parties agreed that evidence would be submitted through depositions and affidavits.

The evidence establishes that Cornerstone is a non-profit corporation. It was established for the "purpose of bringing glory to almighty God by promulgating the gospel of Jesus Christ and the truths of the Holy Bible." Brief of Cornerstone in support of appeal at 2. It carries out this purpose primarily through television broadcasts of religious programming.

Over 95 percent of Cornerstone's broadcasting time is devoted to religious programming. According to Cornerstone's evidence, approximately 2.8 million persons watch its religious programming. Cornerstone's broadcasting activities are financially supported primarily through donations from its viewing audience. Each month approximately 4,000 persons make donations to Cornerstone.

Under section 204(a)(3) of the General County Assessment Law, 72 P.S. §5020-204(a)(3), the legislature has exempted from local taxation all institutions of charity "founded, endowed, and maintained by public or private charity." The Institutions of Purely Public Charity Act (Act of November 26, 1997, P.L. 508, no. 55,10 P.S. §371 et seq. (Act 55)), section 5 (10 P.S. §375), sets forth the criteria for institutions of purely public charity. Subsection (a) of section 5 states that an institution which meets the criteria set forth in subsections (b), (c), (d), (e), and (f) shall be considered to be "founded, endowed

and maintained by public or private charity." Thus, institutions which meet the criteria set forth in subsections (b)-(f) of section 5 of Act 55 will be exempt from local taxation under section 204(a)(3) of the General County Assessment Law.

Under section 375(b), the institution must advance a charitable purpose; under subsection (c), the institution must operate entirely free from private profit motive; under subsection (d), the institution must donate or render gratuitously a substantial portion of its services; under subsection (e), an institution must benefit a substantial and indefinite class of persons who are legitimate subjects of charity; and under subsection (f), the institution must relieve the government of some of its burden. Each subsection describes the manner in which these five criteria may be satisfied.

The taxing bodies are not challenging Cornerstone's contention that the evidence establishes that Cornerstone advances a charitable purpose, operates entirely free from private profit motive, donates or renders gratuitously a substantial portion of its services, and benefits a substantial and indefinite class of persons who are legitimate subjects of charity. However, it is the position of the taxing bodies that Cornerstone does not relieve the government of some of its burden.

The taxing bodies contend that the activities of Cornerstone cannot be deemed to relieve government of some of its burden because a government cannot be involved in promoting religion. The difficulty with this argument is that under section 375(f)(5), the criterion that an institution must relieve the government of some of its burden is satisfied if the institution:

"(f)(5) Advances or promotes religion and is owned and operated by a corporation or other entity as a religious ministry and otherwise satisfies the criteria set forth in section 5."

In summary, Cornerstone correctly states that its real estate, which is used for religious broadcasting, is tax-exempt under section 204(a)(3) of the General County Assessment Law if it can establish that it is an institution of charity "founded, endowed, and maintained by public or private charity." Under Act 55, it is an institution of charity founded, endowed, and maintained by public or private charity if it meets the criteria set forth in subsections (b)-(f) of section 5. The evidence supports its position that it has met the criteria set forth in subsections (b)-(f). Consequently, Cornerstone's property is tax-exempt under section 204(a)(3) of the General County Assessment Law.

## II.

The taxing bodies raise two constitutional challenges to the provision of Act 55 granting a tax exemption upon a showing that the institution advances or promotes religion and is owned and operated as a religious ministry.

The taxing bodies' first constitutional challenge is based on the establishment clause of the First Amendment of the United States Constitution which prohibits government from making laws that give preferential treatment to religious activities.[1] In support of their position,

---

1. The constitutional challenge is raised under the Fourteenth Amendment to the United States Constitution which applies the establishment clause of the First Amendment to state governments. See *Haller v. Commonwealth, Department of Revenue*, 556 Pa. 289, 290 n.2, 728 A.2d 351, 351 n.2 (1999).

the taxing bodies rely primarily on two cases: *Texas Monthly Inc. v. Bullock,* 109 S.Ct. 890 (1989) (an action brought by a publisher of a nonreligious publication which successfully challenged a sales tax exemption provided by the Texas legislature for religious publications) and *Haller v. Commonwealth, Department of Revenue,* 556 Pa. 289, 728 A.2d 351 (1999), (in an action brought by taxpayers who publish and purchase books, the Supreme Court of Pennsylvania ruled that a tax exemption for religious publications violates the establishment clause).

The second challenge is based on the Pennsylvania Constitution. The taxing bodies raise the following argument: Article VIII, Section 2(a)(v) of the Pennsylvania Constitution permits the General Assembly to exempt from taxation only those nonprofit entities that are "institutions of purely public charity." [2] Case law holds that an institution cannot be an institution of "purely public charity" within the meaning of Article VIII, Section 2(a)(v), unless it relieves the government of some of its burden. *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (1985). Government does not advance or promote religion so an entity performing this activity does not relieve the government of some of its burden. Consequently, the provision of Act 55 granting a tax exemption to an institution upon a showing that the institution advances or promotes religion is an unconstitutional grant of an exemption to an entity that has not qualified as a purely public charity under Article VIII, Section 2(a)(v).

---

2. Article VIII, Section 5 states that laws exempting property from taxation, other than property enumerated in Article VIII, shall be void.

While Cornerstone sets forth arguments in opposition to the taxing bodies' claim that legislation granting a tax exemption to nonprofit institutions that provide religious programming violates the Pennsylvania and United States Constitutions, it contends that I should not address the merits of these constitutional challenges because political subdivisions of a state lack standing to raise constitutional challenges to state legislation describing those properties and activities that may be taxed.

There are three separate issues that Cornerstone may be raising through the defense that the taxing bodies lack standing to pursue these constitutional challenges: (1) a failure to meet the general standing requirement of an injury-in-fact; (2) the absence of any constitutional protections under the Fourteenth Amendment; and (3) the lack of power to raise challenges under the Pennsylvania Constitution to state legislation.

1.

Under well-established case law, a party has no standing to obtain judicial resolution of a claim unless that party has an interest in the subject matter which is substantial, immediate, and direct. The party raising the claim must show that there is a harm to an interest of that party caused by the matter of which the party complains. *Pittsburgh Trust for Cultural Resources Inc. v. Zoning Board of Adjustment,* 145 Pa. Commw. 503, 511, 604 A.2d 298, 303 (1992); *Wm. Penn Parking Garage Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975).

It is not clear that the taxing bodies have suffered an injury. A substantial argument may be made that only taxpayers are harmed by legislation that unlawfully ex-

cludes certain properties from tax rolls. A taxing body is not harmed because it sets a millage rate that takes into account any properties that the legislature has excluded from taxation.[3] See *Hazleton v. Hazleton Area School District,* 442 Pa. 477, 276 A.2d 545 (1971) (a municipal corporation may not maintain an action to protect the rights of its resident taxpayers where the litigation does not affect the municipal corporation directly); *Township of Upper Moreland v. PennDOT,* 48 Pa. Commw. 27, 409 A.2d 118 (1979) (township cannot sue to challenge expenditures of the Department of Transportation on the ground that they are contrary to the Pennsylvania Constitution; the power to sue or be sued is not a mandate for the township to sue as a representative of its citizens—aggrieved citizens harmed by unlawful expenditures can assert their own claims).

The argument of the taxing bodies is that they have obligations that are mandated by the Pennsylvania Constitution and/or the General Assembly; it is more difficult for these bodies to perform these obligations if they are unable to impose taxes to the full extent provided for under the constitution. Consequently, they are proper parties to raise the claims.

For purposes of this opinion, I will assume that there is direct harm to an interest of each taxing body resulting from legislation that unconstitutionally exempts property from taxation and, thus, the taxing bodies have standing under the injury-in-fact standing requirement.

---

3. A taxing body has standing to challenge a property owner's exemption claim, by taking the position that legislation does not exempt this property from taxation, because the legislature has imposed on each taxing body a duty to tax any property that it is authorized to tax under an Act of the General Assembly.

## 2.

The taxing bodies' federal constitutional challenge to the provisions of Act 55 which grant a tax exemption to institutions that advance or promote religion is brought under the Fourteenth Amendment to the United States Constitution and based on the establishment clause of the First Amendment which prohibits government from making laws that provide preferential treatment to religious activities. See *Haller v. Commonwealth, supra,* 556 Pa. 289, 728 A.2d 351. This challenge is without merit because there is an established body of case law holding that the provisions of the federal constitution do not apply to state legislation defining relationships between the state and the instrumentalities that the state has created to fulfill its governmental obligations.[4]

The federal case law is summarized in the recent opinion of the United States District Court for the Southern District of New York in *City of New Rochelle v. Town of Mamaroneck,* 111 F. Supp.2d 353 (S.D.N.Y. 2000). In that case, the issue was whether a municipality had standing to challenge on federal constitutional grounds an ordinance promulgated by an adjacent municipality as the result of a dispute over a proposed shopping development. Although the district court found that the plaintiff

---

4. There is a single exception: most federal courts permit a political subdivision to raise against the state the claim that under the supremacy clause of the United States the political subdivision must comply with federal legislation that conflicts with state law. See *Branson School District RE-82 v. Romer,* 161 F.3d 619, 627-30 (10th Cir. 1998), and cases cited therein. (The rationale for the exception is that the dispute is not between the political subdivision and the state as to how the political subdivision should conduct its affairs; the issue, instead, is whether the political subdivision must follow federal law or state law.)

(New Rochelle) had sufficiently alleged an injury-in-fact or such a personal stake in the outcome of the litigation as to warrant invocation of the court's jurisdiction, it ruled that New Rochelle could not maintain a claim under the federal constitution:

"It has long been the case that a municipality may not invoke the protections of the Fourteenth Amendment against its own state. See *City of Newark v. New Jersey,* 262 U.S. 192, 196, 43 S.Ct. 539, 67 L.Ed. 943 (1923). A municipality is thus prevented from attacking state legislation on the grounds that the law violates the municipality's own rights. See *e.g., City of New Orleans v. New Orleans Water-Works Co.,* 142 U.S. 79, 89-91, 12 S.Ct. 142, 35 L.Ed. 943 (1891); *Hunter v. City of Pittsburgh,* 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907). Moreover, while municipalities or other state political subdivisions may challenge the constitutionality of state legislation on certain grounds and in certain circumstances, these do not include challenges brought under the due process or equal protection clauses of the Fourteenth Amendment. See *e.g., Rogers v. Brockette,* 588 F.2d 1057 (5th Cir.), *cert. denied,* 444 U.S. 827, 100 S.Ct. 52, 62 L.Ed.2d 35 (1979) (local school district had capacity to challenge constitutionality of state statute under supremacy clause); *San Diego Unified Port District v. Gianturco,* 457 F. Supp. 283 (S.D. Cal. 1978), *aff'd,* 651 F.2d 1306 (9th Cir. 1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982) (political subdivision can challenge constitutionality of state legislation under supremacy clause). This is because 'a municipal corporation, in its own right, receives no protection from the equal protection or due process clauses vis-à-vis its

creating state.' *South Macomb Disposal Authority v. Township of Washington,* 790 F.2d 500, 505 (6th Cir. 1986) (citing *City of Moore v. Atchison, Topeka & Santa Fe Railway Co.,* 699 F.2d 507, 511-12 (10th Cir. 1983); *Delta Special School District No. 5 v. State Board of Education,* 745 F.2d 532, 533 (8th Cir. 1984); and others). The due process and equal protection clauses 'have not been interpreted as limitations on the internal political organization of a state.' *Id.*

"In *South Macomb,* the Sixth Circuit addressed the question of whether a municipal corporation could sue another township within the same state on the ground that the township imposed certain waste disposal permitting requirements in violation of the municipal corporation's right to due process and equal protection. Applying the same reasoning that has led federal courts to bar municipalities from bringing due process and equal protection claims against their own states, the Sixth Circuit concluded:

"[T]he Fourteenth Amendment simply does not prescribe guidelines and impose restriction upon one political subdivision vis-à-vis another political subdivision. *The relationship between the entities is a matter of state concern; the Fourteenth Amendment protections and limitations do not apply. Id.* (emphasis added)" 111 F. Supp.2d at 364.

The law is also summarized in the recent opinion in the United States Court of Appeals for the Tenth Circuit in *Branson School District RE-82 v. Romer, supra,* 161 F.3d at 628, where the court, in ruling that a political subdivision has standing to bring a constitutional claim against its creating state based on the supremacy clause,

recognized that this was an exception to the general principle.

"It is well-settled that a political subdivision may not bring a federal suit against its parent state based on rights secured through the Fourteenth Amendment. See *City of Moore, Oklahoma v. Atchison, Topeka & Santa Fe Ry. Co.,* 699 F.2d 507, 511-12 (10th Cir. 1983) (rejecting an equal protection challenge against a state statute because 'political subdivisions of a state lack standing to challenge the validity of a state statute on Fourteenth Amendment grounds'); see also, *United States v. Alabama,* 791 F.2d 1450, 1455 (11th Cir. 1986); *South Macomb Disposal Auth. v. Township of Washington,* 790 F.2d 500, 504-505 (6th Cir. 1986); *Town of Ball v. Rapides Parish Police Jury,* 746 F.2d 1049, 1051 n.1 (5th Cir. 1984); *Village of Arlington Heights v. Regional Trans. Auth.,* 653 F.2d 1149, 1152-53 (7th Cir. 1981); *City of New York v. Richardson,* 473 F.2d 923, 929 (2d Cir. 1973)."

Also, see *Housing Authority of Kaw Tribe of Indians of Oklahoma v. City of Ponca,* 952 F.2d 1183 (10th Cir. 1991) ("Since the city complied with the state legislature's prescription, its actions are sanctioned by the legislature. The authority, as a state agency, cannot therefore void the city's actions based on an assertion of a constitutional right inherent in the agency. We thus conclude that a political subdivision of a state may not challenge the validity of a fellow political subdivision under the Fourteenth Amendment unless such action is expressly authorized the creating state." *Id.* 1189-90 (citations omitted)); *Village of Arlington Heights v. Regional Transportation Authority,* 653 F.2d 1149 (7th Cir. 1981)

(municipalities cannot challenge the validity of a state statute under the Fourteenth Amendment because they are creatures and instrumentalities of the state); *South Macomb Disposal Authority v. Township of Washington,* 790 F.2d 500, 505 (6th Cir. 1986) (equal protection and due process clauses "have not been interpreted as limitations on the internal political organization of a state"); and *Atlantic Coast Demolition & Recycling Inc. v. Board of Chosen Freeholders of Atlantic County,* 893 F. Supp. 301, 315 (D. N.J. 1995) ("In other words, municipalities may assert claims against the creating state under the supremacy clause, but not under other substantive constitutional guarantees.").

The Pennsylvania appellate courts also construe the federal constitution in this fashion.

In *School District of Philadelphia v. Pennsylvania Milk Marketing Board,* 683 A.2d 972 (Pa. Commw. 1996), the school district, a consumer organization, and an individual filed a petition for review of an order issued by the Pennsylvania Milk Marketing Board pursuant to Pennsylvania's Milk Marketing Law which fixed minimum wholesale prices for milk in milk market area 1, including prices charged to schools. The petitioners asked the Commonwealth Court to declare that the Milk Marketing Law was unconstitutional and to direct the Milk Marketing Board to permit minimum wholesale prices for school milk to be fixed by market forces. The school district alleged that as a result of the Milk Marketing Law, the school district spent an additional one million dollars per year to purchase milk to serve its students. In footnote 5 of its opinion, the Commonwealth Court ruled

that a school district has no rights under the federal constitution to assert against the state:[5]

"The Attorney General of Pennsylvania, who has intervened in this matter, asserts that the school district lacks the capacity to make this challenge on the ground that a school district has no rights under the federal constitution which it may assert in opposition to the will of the Commonwealth, its creator. . . . While we agree that this is an accurate statement of the law, the remaining petitioners may raise the challenge, and have done so. Thus the school district's ability to assert this issue is of no consequence." 683 A.2d at 975-76 n.5. (citations omitted)

In *Commonwealth, Dept. of Environmental Resources v. Borough of Carlisle,* 16 Pa. Commw. 341, 347, 330 A.2d 293, 297 (1974), the court ruled that the Borough of Carlisle and the Carlisle Borough Sewer System Authority could not raise a constitutional challenge based on the federal constitution to an order entered by the Department of Environmental Resources restricting new connections to the sewage system of the Borough of Carlisle because the federal constitution does not restrain a state legislative body's control over a municipal cor-

---

5. Previously, the school district had instituted a lawsuit in United States District Court for the Eastern District of Pennsylvania (*School District of Philadelphia v. Pennsylvania Milk Marketing Board,* 877 F. Supp. 245 (E.D. Pa. 1995)), which raised constitutional challenges to the milk pricing scheme. The federal district court ruled that "[a] creation of the state cannot challenge its maker's decisions on constitutional grounds." *Id.* at 251. It cited Pennsylvania appellate court case law and rulings of federal district courts applying Pennsylvania law to support the statement that "Pennsylvania courts have consistently ruled that a school district has no rights under the federal constitution to assert against the state." *Id.* at 250.

poration which it has created to exercise the governmental powers of the state:

"The order by the DER in the instant case was nothing more than [an] exercise of state power over its agency, the Borough of Carlisle, to regulate sewage treatment within the borough. And, as stated in *Hunter [v. City of Pittsburgh,* 207 U.S. 161 (1907)], such action is unrestrained by any provision of the Constitution of the United States."

Also, see *Penn-Delco School District v. Schukraft,* 95 Pa. Commw. 619, 625-26, 506 A.2d 956, 960 (1986) (citations omitted) ("Appellant's third contention is that the district has been denied equal protection of the laws as guaranteed by the Fourteenth Amendment to the federal constitution by virtue of the district's being denied the opportunity to collect its own taxes as home rule charter municipalities are allowed. This argument is also without merit. A school district, as an agency of the Commonwealth or a quasi-municipal corporation created by the Commonwealth for the sole purpose of administering the Commonwealth's system of public education, has no rights under the federal constitution which it may assert in opposition to the will of the Commonwealth, its creator."); and *Philadelphia Facilities Management Corp. v Biester,* 60 Pa. Commw. 366, 389-90, 431 A.2d 1123, 1135 (1981) (citations omitted) ("a municipal corporation, being a creature of the state, cannot invoke federal constitutional protections against legislative acts of its sovereign, the state").

In summary, I should not consider whether a state law that grants tax exemptions to institutions that advance or promote religion violates the Fourteenth Amendment to

the United States Constitution because a political subdivision of a state does not have any Fourteenth Amendment protections with respect to state legislation addressing the manner in which the political subdivision shall conduct its affairs. Compare *Haller v. Commonwealth, Department of Revenue, supra,* where taxpayers raised a constitutional challenge to Pennsylvania's sales tax exemption for certain sales of religious publications.

### 3.

The next issue is whether under Pennsylvania law, political subdivisions have the legal power to raise constitutional challenges to state legislation that are based on the Pennsylvania Constitution. In order to do anything, a political subdivision needs to show that it has been given the authority to do so.

While there is no legislation which expressly states that the power given to a political subdivision, to sue or be sued in connection with the collection of taxes, extends to lawsuits challenging the constitutionality of state legislation excluding types of property or services from taxation, the taxing bodies contend that this authority is implied. I do not find this argument to be persuasive.

Political subdivisions are creatures of the state and the authority of the legislature over their powers is supreme. A political subdivision has no inherent powers and may do only those things that the legislature has placed within its power to do. *Denbow v. Borough of Leetsdale,* 556 Pa. 567, 576, 729 A.2d 1113, 1118 (1999); *In re Appeal of the Borough of Ambridge,* 53 Pa. Commw. 251, 253, 417 A.2d 291, 292 (1980). The power of taxation lies solely in the General Assembly; political subdivisions

have no inherent power of taxation. No political subdivision has any power or authority to collect a tax absent a grant or delegation of the power to tax from the General Assembly. *SEPTA v. Board of Revision of Taxes,* 777 A.2d 1234 (Pa. Commw. 2001); *Mastrangelo v. Buckley,* 433 Pa. 352, 250 A.2d 447 (1969). Political subdivisions are "administrative arm[s]" of the legislature created to carry out the legislature's directives. *Petition of Granat,* 139 Pa. Commw. 376, 381, 590 A.2d 849, 852 (1991). The legislature would not have delegated to an administrative arm that it created to carry out its directives, the power to challenge the constitutionality of these directives. Thus, once the legislature has enacted legislation which provides that the power to tax given to a political subdivision does not extend to certain types of property or services, this is the end of the matter with respect to what the political subdivision may tax.

This conclusion as to legislative intent does not insulate from state constitutional challenges legislation exempting charitable institutions from the payment of local real estate taxes any more than legislation granting other exemptions to charitable institutions. To the contrary, this ruling, that the local taxing bodies have no authority to raise constitutional challenges to Act 55, places claims for exemptions furnished to charitable institutions from local taxes (72 P.S. §5020-204(a)(3)) based on Act 55 on the same footing as claims for exemptions from state taxes based on Act 55—for example, the exclusion from the state sales tax furnished to any charitable institution (72 P.S. §7204(10)). In each instance, there is no taxing body or governmental office that the legislature has authorized to raise constitutional challenges to its legislation.

In *City of Pittsburgh v. Commonwealth of Pennsylvania,* 112 Pa. Commw. 188, 535 A.2d 680 (1987), *aff'd,* 522 Pa. 20, 559 A.2d 513 (1989), the City of Pittsburgh and Richard S. Caliguiri, individually and as mayor of the city, requested the court to declare unconstitutional a section of the Local Tax Enabling Act that prevented the City of Pittsburgh from collecting a wage tax from non-residents working within the city who have paid a similar tax to the political subdivisions where they reside. The city contended that its residents bore an unconstitutionally unfair tax burden by reason of these statutory provisions and, thus, the state legislation violated the uniformity clause of the Pennsylvania Constitution, the equal protection clause of the United States Constitution, and Sections 1 and 2 of Article IX of the Pennsylvania Constitution.

The Commonwealth Court upheld the state's preliminary objection raising the city's lack of standing to assert federal or state constitutional protections against the Commonwealth:

"This court has held that inasmuch as a municipality is merely a creature of the sovereign created for the purpose of carrying out local government functions, the municipality has no standing to assert the claims of its citizens against the Commonwealth. . . . Here, the thrust of the petition for review is that the citizens of Pittsburgh are being disadvantaged by the allegedly unfair and discriminatory provisions of the challenged statutes. There is no allegation that the city's local government functions have been adversely affected by the allegedly unequal tax structure. . . . We conclude that the city's cause of action against the Commonwealth is barred and

the respondents' demurrer in that regard must be sustained." 112 Pa. Commw. at 191-92, 535 A.2d at 682. (citations omitted)

Also, see *Marriott Corp. v. Board of Assessment Appeals of Montgomery County,* 63 Pa. Commw. 622, 628, 438 A.2d 1032, 1035 (1982). ("If the vested rights claim be regarded as a constitutional one, it is barred because a municipal corporation cannot invoke constitutional protections against its sovereign, the state.")

In *Chartiers Valley Joint Schools v. Allegheny County Board of School Directors,* 418 Pa. 520, 211 A.2d 487 (1965), four school districts and numerous taxpayers contended that a school reorganization act violated various provisions of the Pennsylvania Constitution. The majority opinion did not consider the claim that the school districts lacked standing to sue because the taxpayers had standing to raise the constitutional challenges. In a concurring opinion, Mr. Justice Cohen considered the "unwarranted appearance of the school districts":

"How is it that the school district, the creature of the legislature, given life for the sole purpose of carrying out the legislature's duty to provide education in the manner directed by the legislature, can attack the legislature's directions for discharging its duty? Certainly the legislature has not given the school district the *duty* of making sure that the legislature acts constitutionally. And the school district has no powers that are not either expressly conferred upon it by the legislature or implied from the nature of its duties.

"Moreover, the school district is not an elector or a taxpayer or an entity that can claim an injury arising from unlawful delegation or discriminatory classification or

impairment of contracts. It has no constitutional rights which the legislature can impair." *Id.* at 548, 211 A.2d at 502. (emphasis in original)

The appellate courts have recognized one exception in which constitutional challenges may be raised to state legislation—where the state legislation is preventing political subdivisions or elected officials of a political subdivision from fulfilling their governmental functions.[6]

In *DeFazio v. Civil Service Commission of Allegheny County,* 562 Pa. 431, 756 A.2d 1103 (2000), the sheriff of Allegheny County contended that legislation requiring sheriffs of second class counties to abide by certain hiring and promotion practices and limiting political activities of the sheriff's employees violated the Pennsylvania Constitution. Defendants challenged the sheriff's standing, apparently on the ground that the legislation limited the activities of the sheriff's employees, and not those of the sheriff himself; thus, the sheriff had no di-

---

6. In *Community Options Inc. v. Board of Assessment, Appeals and Review,* 764 A.2d 645 (Pa. Commw. 2000), *alloc. granted,* 567 Pa. 719-33, 786 A.2d 991 (2001), the taxing bodies raised challenges based on Article VIII of the Pennsylvania Constitution to provisions of Act 55 granting a tax exemption to institutions operating free from private profit motive which provide services government would otherwise be obligated to provide, where government funds are the sole source of the institution's revenue. I ruled that these provisions did not violate the Pennsylvania Constitution. The Commonwealth Court reversed my decision. It ruled that I should not have considered whether the property qualified for a statutory exemption under Act 55 without first finding that the property met the constitutional definition of a "purely public charity" under the standards set forth in *Hospital Utilization Project v. Commonwealth, supra,* 507 Pa. 1, 487 A.2d 1306, and its progeny. In the *Community Options* litigation, the property owner never questioned the standing of the taxing bodies to raise constitutional challenges to Act 55.

rect substantial interest in his claim of unconstitutionality and therefore did not have standing to bring the action. The Pennsylvania Supreme Court, citing only the case law governing "injury-in-fact" principles of standing, ruled that the sheriff of Allegheny County had standing because a sheriff has a substantial interest in the management and operation of his or her office and these interests are clearly affected by this legislation.

In *Harrisburg School District v. Hickok,* 762 A.2d 398 (Pa. Commw. 2000), a school district challenged the constitutionality of the Education Empowerment Act which authorized the Secretary of Education to place control of the school district in a Board of Control. The court stated that the school district had standing to challenge the constitutionality of its creator's actions:

"In this case, the Harrisburg School District is certainly affected because other than levying taxes, the affairs of operating the school district have been taken away from it. As in *DeFazio,* because the Harrisburg School District has a substantial, direct and immediate interest in the outcome of this matter, it has standing to bring this action. . . .

"[For enforcement of legislation, t]he true party in interest is the government official who implements a law." *Id.* at 404 n.6.

In the present case, there is no claim that the provision of Act 55 granting tax exemptions to institutions that advance or promote religion and meet the other criteria of Act 55 will significantly interfere with the taxing bodies' ability to manage their affairs. Thus, the taxing bodies have no authority to raise constitutional challenges based on Article VIII, Section 2(a) of the Pennsylvania Constitution.

## ORDER

On December 13, 2001, upon consideration of Cornerstone Television Inc.'s appeal from the decision of the Board of Property Assessment, Appeals and Review and following a nonjury trial, it is ordered, adjudged, and decreed that the property of Cornerstone Television Inc. that is the subject of the appeal is exempt from taxation.